IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOSEPH SULLIVAN and<br>MONICA CHAVEZ, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 5:23-CV-049-H-BQ |
| GARZA COUNTY SHERIFF'S<br>OFFICE, *et al.*, | §<br>§<br>§ | |
| Defendants. | §<br>§ | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Sergeant Bobby Dean's Motion to Dismiss under Rule

12(b)(5) and (6), and brief and appendix in support.   ECF Nos. 34, 35.   Pro se Plaintiffs Joseph

Sullivan and Monica Chavez filed their response and Dean has filed his reply. ECF Nos. 44, 47.

The motion is now ripe for decision.   After reviewing the motion and applicable law, the

undersigned recommends that the United States District Judge provide Plaintiffs fourteen days

after any order adopting this recommendation to: (1) amend their claims; (2) serve Dean with the

amended complaint; and (3) correct the deficient signatures on their filings.   Should Plaintiffs

amend their claims and serve Dean with an amended complaint, the undersigned recommends that

the United States District Judge **DENY** Dean's 12(b)(5) and 12(b)(6) Motions as moot.   Should

Plaintiffs amend their claims and serve Dean with an amended complaint but fail to correct the

deficient signatures on the filings identified herein, the undersigned recommends that those filings

be stricken.

Alternatively, should Plaintiffs elect not to amend their Complaint but instead properly

serve Dean with the extant Complaint, the undersigned recommends that the United States District

Judge (1) **DENY** Dean's Rule 12(b)(5) Motion and (2) **GRANT** Dean's Rule 12(b)(6) Motion and dismiss Plaintiffs' Complaint.[1]

## I.    Background

### A.  Plaintiffs' Factual Allegations

For the purpose of evaluating Dean's Motion to Dismiss, the Court accepts as true the following narrative from Plaintiffs' Complaint.  Plaintiffs assert that on May 8, 2021, Defendant Deputy Derek Johnson stopped them for a speeding violation in Post, Texas.  Compl. 5, ECF No. 1.[2]  Defendant Deputy Samuel Melton soon arrived on scene, and Johnson informed him that he suspected Plaintiffs had THC inside their car.  *Id.*  Johnson requested permission from Chavez to search the vehicle.  *Id.*  Chavez, who was driving at the time, initially consented.  *Id.*  Plaintiffs allege that Melton then asked Sullivan to step out of the vehicle, without "consent" or "reasonable suspicion."  *Id.*  Sullivan informed officers that the vehicle was a rental, and he was the lessee of the vehicle, not Chavez.  *Id.*  Sullivan further told Chavez she should not consent to the search, which she subsequently withdrew.  *Id.*

Plaintiffs further aver that:  (1) Sullivan was then unlawfully handcuffed and detained in the back of the deputy's car; and (2) "Deputy Johnson stated it did not matter that Sullivan had rented the vehicle, and that Sullivan should" not have influenced Chavez's consent decision "because Sullivan is an attorney."  *Id.* at 5–6.  Chavez again consented to the search, but Johnson stated he would "call a dog," believing that Chavez had withdrawn her consent.  *Id.* at 6–7.  Plaintiffs allege that they were held against their will while waiting for the dog to arrive.  *Id.* at 6.

---

[1] In the unlikely event Plaintiffs neither amend nor re-serve their Complaint, the undersigned recommends that the United States District Judge (1) **GRANT** Dean's Rule 12(b)(5) Motion and (2) **DENY** his Rule 12(b)(6) Motion as moot.

[2] Page citations Plaintiffs' pleadings refer to the electronic page number assigned by the Court's electronic filing system.

While waiting, "Sullivan was allowed to step out of the law enforcement vehicle" and "discuss[ed] . . . what was ta[]king place at that moment." *Id.* at 7. Defendant Sergeant Bobby Dean arrived "a few minutes later" with his K-9, Zara, and Johnson "informed . . . Dean he suspected there are some sealed bags" in the back of the vehicle that "look[ed] like . . . THC bags," but because they were "sealed," he could not "see back there." *Id.* Dean then walked Zara around the vehicle and Sullivan saw "no indication of a 'hit.'" *Id.* at 8. Plaintiffs assert that Dean, however, "walked back to his . . . truck and said nothing," but then "made a gesture" with "a nod or thumbs up towards the deputies." *Id.* Dean "said nothing" because he was "previously told to not say anything around Plaintiff Sullivan." *Id.* Johnson then said, "'she hit on the back door,' although he had previously stated he did not know how Zara indicated a scent of drugs." *Id.* Later in their Complaint, Plaintiffs contradictorily claim that after walking Zara around the vehicle, "Dean threw a tennis ball against the rear driver's side door and gave it to Zara" and then said "[y]es" to Johnson and Melton, giving them the go-ahead to search Plaintiffs' vehicle. *Id.* at 13. Deputies proceeded to search "all compartments of the vehicle" and found nothing incriminating. *Id.* at 8–9. Sullivan was then un-cuffed and allowed to return to the vehicle, and Johnson gave Chavez a warning for the speeding infraction. *Id.* at 9.

Plaintiffs allege that Dean violated their Fourth Amendment rights by: (1) illegally searching the vehicle after Chavez withdrew consent; (2) fabricating evidence by lying about the K-9's indication of drugs to establish probable cause; and (3) "conspir[ing] and work[ing] in tandem" with other Defendants "to violate Plaintiff's [sic] right to be free from unreasonable searches, thus making them liable for the others [sic] illegal acts." *Id.* at 11–12. Plaintiffs sue Dean in his individual capacity and seek money damages. *Id.* at 4, 16.

## B. Parties' Arguments

Dean filed a Motion to Dismiss on July 28, 2023, contending dismissal is appropriate because: (1) Plaintiffs failed to properly serve Dean under Federal Rule of Civil Procedure (FRCP) 4 and Texas Rule of Civil Procedure (TRCP) 106; and (2) Dean is entitled to qualified immunity. ECF No. 34, at 1. Dean maintains that he is employed by Post Independent School District (PISD). *Id.* at 4. Dean asserts as grounds for 12(b)(5) dismissal that Plaintiffs' process server improperly left service papers with Administrative Assistant, Melinda Quintana, at "Garza County Sheriff's Office, where Defendant Dean is neither employed nor was located that day." *Id.* Similarly, the process server also left papers with Garza County Attorney Ted Weems at the "Garza County Courthouse, where Defendant Dean is neither employed nor was located that day." *Id.* Dean contends that these service attempts were improper under FRCP 4(e) and TRCP 106. *Id.* at 5–6. Dean concludes that because Plaintiffs failed to properly serve him and the time for serving Defendants has now passed, the Court should dismiss the suit. *Id.* at 6. In support of his Rule 12(b)(5) motion, Dean attached declarations from Quintana and Weems reiterating the facts surrounding being served. ECF No. 35.

Dean contends that dismissal under Rule 12(b)(6) is also proper because he is entitled to qualified immunity. ECF No. 34, at 1. Dean asserts that he did not violate any of Plaintiffs' constitutional rights as to their unreasonable search claim because "although . . . Dean was not present, the initial traffic stop was lawful" and "Johnson had the reasonable suspicion of additional criminal activity because he believed . . . the car contained THC." *Id.* at 7–8. Dean then "arrived within a few minutes with a drug dog." *Id.* at 8 (quotation marks omitted). He also argues that dog sniffs are not searches and do not implicate the Constitution. *Id.* He concludes that because

Johnson had reasonable suspicion, Dean conducting an open-air sniff was objectively reasonable and did not violate Plaintiffs' rights. *Id.* at 9.

As to Plaintiffs' fabrication of evidence claim, Dean asserts that Plaintiffs do not cite to any constitutional authority for this claim, but because "[c]ourts have held that where police intentionally fabricate evidence and use it to frame and bring false charges . . . there may be a due process violation under the Fourteenth Amendment." *Id.* (emphasis omitted). Dean contends that this claim should be dismissed because he was not "involved in the search of the vehicle after the open air sniff, much less in manipulating any undefined fabricated evidence." *Id.* at 9 (internal quotation marks omitted). Moreover, "there was no deprivation of any liberty right: Plaintiffs were released and never charged with a crime." *Id.* at 10. Therefore, Dean could not have violated Plaintiffs' Fourteenth Amendment due process rights. *Id.* at 9–10. Lastly, Dean contends that Sullivan's "speculation that he personally does not believe the dog alerted 'does not preclude immunity' because Plaintiffs fail to establish . . . any clearly established law." *Id.* (quoting *Weisshaus v. Teichelman*, 637 F. Supp. 3d 434, 444 (N.D. Tex. 2022)).

Plaintiffs maintain that service of process was proper because PISD Resource Department "is a subdivision of the Garza County Sheriff's Department"; however, they also ask this Court to find that "Dean can be properly served by leaving a copy of the Complaint at his dwelling or usual place of abode" in accordance with TRCP 106(b) and "to find Garza County Attorney Ted Weams [sic] is an authorized agent . . . to accept service on behalf of . . . Dean." ECF No. 44, at 1–2. They assert that "all parties agree that . . . Weams [sic] received summons for . . . Dean" and that "[t]hese actions by Plaintiff's [sic] are reasonably effective to give defendant notice of the lawsuit." *Id.* at 5. Alternatively, Plaintiffs request an additional forty-five days to perfect service. *Id.* at 6. They assert that they made "good faith efforts to request waivers" as the basis of this request. *Id.*

In response to Dean's qualified immunity defense, Plaintiffs mostly copy and paste general rules relating to § 1983 cases, the 12(b)(6) standard, and Fourth Amendment law. *Id.* at 6–9. They argue, however, that when "Dean arrived, Plaintiffs were visibly detained" and "any reasonable . . . officer would recognize this." *Id.* at 7. "A reasonable K-9 officer would know if the dog detects an illegal substance," and "if he fabricates evidence [that] the K-9 detected an illegal substance," "the search will expand and the Plaintiff's [sic] will remain detained." *Id.* at 7–8. Plaintiffs clarify that they "have not challenged the lawfulness of the [initial] traffic stop" but do "dispute that a 'canine hit' occurred" because "Johnson did not know how a hit was indicated," even though "this was the only police canine in the community," and "Sullivan observed no indication of a hit." *Id.* at 9–10. Plaintiffs aver that this position is bolstered by Zara's "perfect record of detecting Marijuana since 2013." *Id.* at 10. Plaintiffs contend that when "Sullivan indicated Zara did not make an indication of any illegal substances[,] . . . a reasonable fact finder could believe that fact was true . . . [in light of] Zara's perfect record[,]" because during Plaintiffs' traffic stop "Zara [purportedly] detected Marijuana[] when none was present." *Id.* Thus, "[a] reasonable fact finder could determine Bobby Dean intentionally fabricated evidence of a drug detection by K-9 Zara . . . ." *Id.* Plaintiffs attach six exhibits in support of their response, consisting primarily of printouts from the Garza County website and information related to the service issue. ECF No. 45.

In Dean's Reply, he "objects to Plaintiffs' Exhibits . . . as improperly authenticated hearsay under Federal Rules of Civil Procedure 801–802." ECF No. 47, at 1. Dean opposes Plaintiffs' retroactive request to serve him under TRCP 106(b) and restates that Weems cannot accept service on behalf of Dean. *Id.* at 2–5. In addition, Dean asserts that Plaintiffs "insinuate to this Honorable Court that they have complied with Rule 4(e)(2)(B) based on their now-claim that they left a copy

of the summons on a table where they think Defendant Dean may live," but did not "le[ave] the summons with anyone at Defendant Dean's residence" and thus fail to meet Rule 4's requirements. *Id.* at 4.

Substantively, Dean argues that Plaintiffs' Response identifies "no facts alleged in support of an [u]nreasonable [s]earch claim against Defendant Dean" and "appears to abandon/withdraw this claim." *Id.* at 6. Dean also explains that in support of their fabrication of evidence claim, Plaintiffs "confusingly" include caselaw about excessive force, which "is not a claim they have pleaded against Defendant Dean." *Id.* Moreover, this does not "address how Defendant Dean allegedly conducted an illegal search, much less waived immunity." *Id.* Dean contends that Plaintiffs' disbelief that a hit occurred, and the fact that Johnson did not know how Zara signaled, "has nothing to do with whether Defendant Dean engaged in an illegal search" and does "not raise a constitutional violation." *Id.* at 7. Dean reiterates that Plaintiffs cannot assert a viable fabrication of evidence claim because "Plaintiffs point to no evidence . . . allegedly fabricated" and "Dean did not bring 'charges' against Plaintiffs, nor did any of the other Defendants." *Id.* at 8. He further asserts that "Plaintiffs have not demonstrated that Defendant Dean acted [in an] objectively unreasonable" manner and that Plaintiffs' contradictory assertions about how Dean responded to Zara's "alert" are not entitled to a presumption of truthfulness. *Id.* at 8–9.

Lastly, and for the first time, "Dean requests clarification as to the nature of the relationship between the Plaintiffs" and "requests dismissal of all claims asserted by Plaintiff Chavez." *Id.* at 9. In support of this request, he contends: (1) despite claiming to be pro se plaintiffs, the name and address of "the plaintiff or the plaintiff's attorney on whom the answer or motion must be served in the citation in this matter" only included Sullivan's contact information; (2) Sullivan "is not licensed in the State of Texas, nor is he admitted to practice in the Northern District of Texas,

nor has he applied for pro hac vice admission"; (3) Sullivan is "merely electronically signing Plaintiff Chavez's name to his pleadings . . . to circumvent representation and admission requirements"; and (4) Plaintiff Chavez has not responded to Dean's Motion to Dismiss as a result of Sullivan's unlawful attempts to represent Chavez. *Id.* at 9–10. Dean requests that the Motion to Dismiss "be granted as to Plaintiff Chavez on th[ese] independent grounds" or that "this Court clarify the relationship between Plaintiffs . . . and require Plaintiff Chavez to proceed as a true pro se Plaintiff, or require Plaintiff Sullivan to take the appropriate steps to properly practice as her counsel." *Id.* at 10.

## II. Legal Standards

### A. Motion to Dismiss under Rule 12(b)(5)

A motion to dismiss under Rule 12(b)(5) challenges the method or lack of service. *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 745 (N.D. Tex. 2013). A court cannot exercise jurisdiction over a defendant who is not properly served. *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 906–07 (5th Cir. 1995). After a defendant contests the validity of service, plaintiff bears the burden of establishing its legitimacy or good cause for failure to effect timely service. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (per curiam) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)); *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (citing *Sys. Signs Supplies v. U.S. Dep't of Just., Wash., D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). To establish good cause, "simple inadvertence or mistake of counsel . . . usually does not suffice and some showing of 'good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time period' is normally required." *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985) (emphasis omitted) (quoting 10 WRIGHT & MILLER FEDERAL PRACTICE &

PROCEDURE: CIVIL § 1165). A pro se plaintiff is not excused from the requirement to accomplish

proper service of process. *Sys. Signs Supplies*, 903 F.2d at 1013.

### B. Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see*

*Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere

conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*,

550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v.*

*SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that

courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements' cannot establish facial plausibility"). A

plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the

complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.  Discussion

#### A.  Plaintiffs have failed to effect proper service on Dean.

This Court previously entered an order providing Plaintiffs 120 days to complete service and advising that failure to do so would result in "dismissal without prejudice unless Plaintiffs show good cause for (1) their failure to timely and properly effect service and (2) the Court to extend the time for service." ECF No. 7, at 1.  Summons was returned executed as to Dean on July 7, 2023, exactly 120 days from the date Plaintiffs filed their Complaint.  ECF Nos. 1, 21. Dean contends that service was attempted on County Attorney Ted Weems and the Sheriff's Office's Administrative Assistant, Melinda Quintana, who are both improper agents for service. ECF No. 34, at 4.  Dean explains that he is neither employed by the Garza County Sheriff's Office, nor was he at the Sheriff's Office that day, and that service on these individuals was improper to serve a PISD employee.  *Id.*  In support of his Rule 12(b)(5) motion, Dean attached declarations from Quintana and Weems reiterating the facts surrounding being served. ECF No. 35.[3]

Plaintiffs advance several grounds to support their contention that they properly served Dean.  First, Plaintiffs maintain that service of process was proper because PISD Resource Department "is a subdivision of the Garza County Sheriff's Department." ECF No. 44, at 1.  They also argue that service was proper because they complied with TRCP 106(b) by leaving the summons and Complaint at the Garza County Law Enforcement Center—a place he can probably be found.  *Id.* at 2–3.  Moreover, Plaintiffs contend that Weems lawfully accepted service for Dean, in accordance with Rule 4(e).  *Id.* at 5.  Finally, Plaintiffs ask this Court to find that they complied with TRCP 106(b) and Rule 4(e) by leaving the summons and Complaint at Dean's "dwelling." *Id.* at 4.  Alternatively, Plaintiffs request an additional forty-five days to perfect service.  *Id.* at 6.

---

[3] The Court may consider declarations in resolving 12(b)(5) motions. *Gray v. Cleco Power, LLC*, No. 5:19-CV-00706, 2020 WL 2134139, at *2 (W.D. La. May 4, 2020).

They assert that they made "good faith efforts to request waivers" in support, but do not otherwise show good cause. *Id.* In Dean's Reply, Dean opposes Plaintiffs' request to re-serve him and restates that Weems cannot accept service on behalf of Dean. ECF No. 47, at 2–5.

Rule 4(e) requires that service on an individual be accomplished by following state law for serving a summons or: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service." FED. R. CIV. P. 4(e). Under Texas law, a plaintiff may accomplish service as follows:

(a) Unless the citation or court order otherwise directs, the citation must be served by:

(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or

(2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition.

(b) Upon motion supported by a statement--sworn to before a notary or made under penalty of perjury--listing any location where the defendant can probably be found and stating specifically the facts showing that service has been attempted under (a)(1) or (a)(2) at the location named in the statement but has not been successful, the court may authorize service:

(1) by leaving a copy of the citation and of the petition with anyone older than sixteen at the location specified in the statement; or

(2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit.

TEX. R. CIV. P. 106.

Plaintiffs do not meet their burden of establishing valid service on Dean under either federal or state law. They merely allege that service on Weems and Quintana was proper because

PISD Resource Department "is a subdivision of the Garza County Sheriff's Department," without attempting to establish that proposition or that Dean authorized them to accept service. ECF No. 44, at 4; *see Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2013 WL 4874115, at *2 (N.D. Tex. June 28, 2013) (finding that service was not proper under Rule 4(e)(2)(C) because plaintiff did not allege that the person served was defendant's authorized agent for service of process); *Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 1778192, at *2 (N.D. Tex. May 5, 2014) (concluding that "[p]laintiff produced no evidence showing that the Assistant City Attorney was an authorized agent to accept service for any of the individual defendants").

In addition, while Plaintiffs allege that they served Dean at his residence, they concede that the return "was not filed with the Court because it did not comport with the 'summons at the individual's residence clause' in its' [sic] entirety on the Proof of Service provided by this Court." ECF No. 44, at 4; *see* ECF No. 45, at 17–18. This service did not comply with Rule 4(e)(2)(B) requirements because the papers were left "on a small table on the front porch," rather than with a person of suitable age and discretion who resides there. ECF No. 44, at 4; *Cummins v. Lollar*, No. 4:12-CV-560-Y, 2014 WL 12585643, at *2 (N.D. Tex. Feb. 28, 2014) (holding that service was improper because, among other attempts, plaintiff's process server merely left a copy of the complaint on defendants' front porch). Moreover, although Plaintiffs ask this Court to give retroactive effect under Rule 106(b) to their attempted service, they fail to demonstrate compliance with the rule's antecedent conditions *prior to* their service attempt. *See* TEX. R. CIV. P. 106(b); ECF Nos. 44, 45. Plaintiffs' failure to obtain Court authorization for substituted service, along with the lack of a sworn statement, renders their attempted service invalid. *See State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298–99 (Tex. 1993) ("Under Rule 106(b) a court may authorize substituted service only after a plaintiff has unsuccessfully tried to effect personal service

or service by certified mail, return receipt requested, as required by Rule 106(a)."); *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.) (stating that "[s]trict compliance is particularly important when substituted service under rule 106 is involved" because "[w]hen a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself"); *Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 921 n.3 (5th Cir. 2021) (per curiam) (acknowledging that "[t]he two additional methods of service under Rule 106(b) [were] inapplicable to th[e] action since the district court did not authorize service via those methods"); *Galindo v. Completion Equip. Rental, Inc.*, No. 20-CV-00260-DC-RCG, 2022 WL 2761745, at *3 (W.D. Tex. Apr. 7, 2022) (concluding plaintiff failed to properly serve defendant in accordance with Texas law, where plaintiff did not accomplish service "by either means given in § 106(a)" and "submitted no motion to th[e] [c]ourt requesting substituted service"), *R. & R. adopted by* 2022 WL 2761739 (W.D. Tex. Apr. 25, 2022).

Service of process on Quintana and Weems was improper and the 120-day deadline for serving process has expired. Plaintiffs have not shown good cause for failing to properly serve Dean but request an additional forty-five days to serve him. In support, they merely assert that "good faith efforts were made to request waivers." ECF No. 44, at 6; *see Winters*, 776 F.2d at 1306 (stating that "simple inadvertence," mistake, and "ignorance of the rules" are generally all insufficient to establish good cause).

Ordinarily, dismissal for insufficient service is not appropriate "unless 'there is no reasonably conceivable means of acquiring jurisdiction over the person of a defendant'" and "is usually without prejudice to allow plaintiff an opportunity to effect proper service." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 633 (N.D. Tex. 2007) (citation omitted). Because the incident

that forms the basis of this suit occurred on May 8, 2021, more than two years ago, a dismissal

without prejudice operates as a dismissal with prejudice.

> [T]he statute of limitations for a suit brought under § 1983 is determined by the
> general statute of limitations governing personal injuries in the forum state. Texas
> has a two year statute of limitations for personal injury claims. Under our law, the
> limitations period begins to run when the plaintiff knows or has reason to know of
> the injury which is the basis of the action. The plaintiff must know of the injury and
> the causal connection between the defendant and the injury.

*Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (internal quotation marks and

citations omitted). "Where further litigation of a claim will be time-barred, a dismissal without

prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard of

review is used." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (brackets

omitted) (quoting *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981));

*see Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016). Because a

dismissal with prejudice is an "extreme sanction," the Fifth Circuit has limited the district court's

discretion in dismissing cases with prejudice. *Berry*, 975 F.2d at 1191 (citation omitted). At least

one of three "aggravating factors" must be present to justify such a dismissal: (1) delay caused by

the plaintiff himself and not his attorney; (2) "actual prejudice to the defendant; or (3) delay caused

by intentional conduct." *Kidd v. Monroe Transit Sys.*, No. 3:19-CV-01596, 2021 WL 537100, at

*6 (W.D. La. Jan. 28, 2021) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)), *R.*

*& R. adopted by* 2021 WL 536136 (W.D. La. Feb. 12, 2021). "This standard of review applies

when a case is dismissed for failure to effect service." *Coleman v. Carrington Mortg. Servs., LLC*,

No. 4:19-CV-00231-ALM-CAN, 2021 WL 1725523, at *3 (E.D. Tex. Apr. 21, 2021), *R. & R.*

*adopted by* 2021 WL 1721706 (E.D. Tex. Apr. 30, 2021) (citations omitted).

Dean acknowledges that because the statute of limitations expired, a dismissal would

effectively be with prejudice which is "reviewed under a heightened standard," but does not argue

that any aggravating factors are present. ECF No. 34, at 2, 4–6. Despite Plaintiffs not showing good cause for failing to timely effect service on Dean, the Court finds that none of the aggravating factors necessitating dismissal with prejudice is present. Plaintiffs filed this action in March 2023 and attempted to effectuate proper service within the time period prescribed by the Court. *See* ECF Nos. 1, 7, 12, 16, 21. Although the delay is attributable to Plaintiffs because they are pro se,[4] the delay here is much shorter than in cases where courts have dismissed with prejudice. *See Thrasher*, 709 F.3d at 511 (affirming dismissal with prejudice for failure to serve defendants because plaintiff waited four months after filing his complaint to effect service, and he did not respond or attempt to re-serve after defendants filed a motion to dismiss for insufficient process); *Fedex Customer Info. Servs., Inc. v. D&D Polymer Co.*, No. DR-12-CV-11-AM/VRG, 2014 WL 12872331, at *7 (W.D. Tex. Jan. 9, 2014) (dismissing plaintiff's case with prejudice based on "a clear record of delay" because plaintiff was completely inactive in its case for twenty months).

In addition, the delay does not seem intentional, and Dean does not assert that he will experience any prejudice. *See Beck v. ISC Constructors, LLC*, No. 1:14-CV-174, 2015 WL 1088846, at *6 (E.D. Tex. Mar. 4, 2015) (finding that dismissal with prejudice was not warranted because serving defendants 150 days after filing the amended complaint was not a significant delay and it appeared that the delay was caused by "negligence and lack of diligence on the part of the plaintiffs' attorneys" and was not intentional).

Because service was defective, the undersigned recommends that the district judge give Plaintiffs the opportunity to serve Dean within fourteen days after entry of any order adopting these findings, conclusions, and recommendation (FCR). In the event Plaintiffs effectuate proper service, it is recommended that the district judge deny Dean's 12(b)(5) Motion as moot. *See*

---

[4] The Court observes, however, that Plaintiff Sullivan is apparently an attorney. Compl. 6–7.

*Bowling v. Childress-Herres*, No. 4:18-CV-610-ALM-CAN, 2019 WL 4463450, at \*9 (E.D. Tex. Aug. 7, 2019) (recommending plaintiff have fourteen days from the date of any order adopting the FCR to re-serve defendant with an amended complaint), *R. & R. adopted by* 2019 WL 4451122 (E.D. Tex. Sept. 17, 2019); *Culley v. McWilliams*, No. 3:20-CV-0739-E-BH, 2021 WL 1799431, at \*5–6, \*11 (N.D. Tex. Apr. 14, 2021) (giving plaintiff thirty days to properly effect service because plaintiff "would be barred by the statute of limitations from refiling her claim"), *R. & R. adopted by* 2021 WL 1789161 (N.D. Tex. May 4, 2021). In addition, the undersigned recommends that Plaintiffs be given leave to amend their Complaint to address the deficiencies discussed below, and properly serve Dean with such complaint. If Plaintiffs do not re-serve Dean within the relevant period, the undersigned recommends that the district judge grant Dean's 12(b)(5) Motion without prejudice.

**B. The Court has not considered any attachments to Plaintiffs' Response in connection with the 12(b)(6) motion.**

Prior to analyzing the substantive arguments in Dean's Motion, the Court must address whether it may properly consider the attachments to Plaintiffs' Response to Defendant's Motion to Dismiss.[5] When considering a Rule 12(b)(6) motion, "a district court must [typically] limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit, however, "has recognized one limited exception." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.* (citation omitted).

---

[5] Dean also attached declarations from Quintana and Weems regarding Plaintiffs' attempted service on them. The Court does not consider these attachments because they are not necessary for resolving Dean's 12(b)(6) motion.

The Fifth Circuit has not set forth a test for determining whether a document is "central" to a plaintiff's claims, but "case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). Where a document "is merely evidence of an element of the plaintiff's claim," however, "the court may not incorporate it into the complaint." *Id.* (citing *Scanlan*, 343 F.3d at 536–37). Regardless, "when matters outside the pleading are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiffs have attached six exhibits to their Response to Dean's Motion to Dismiss: (1) "Printout from txcountyoffices.org" (Exhibit 1); (2) "Sullivan Proofs of Service" (Exhibit 2); (3) "Sullivan Sworn Statement of Service at Dwelling" (Exhibit 3); (4) "Emailed Complaint" (Exhibit 4); (5) "Bobby Dean [Memorandum of Understanding (MOU)] between Garza Co[unty] Sheriff and Post ISD" also labeled Exhibit 4 (Exhibit 4-1); and (6) "Zara Detection Records showing 100% accuracy" (Exhibit 5). ECF No. 45. Exhibit 1 shows a PISD Resource Officer— Dean's job title—job listing, which is listed under "Garza County" on the website. *Id.* at 5–7. Exhibit 2 is the Proof of Service on Ted Weems and Exhibit 3 is the Proof of Service at Dean's home. *Id.* at 12–18. Exhibit 4 is Plaintiffs' email to Dean requesting a waiver of service. *Id.* at 21. Exhibit 4-1 shows a 2006 Memorandum from then Sheriff, Cliff Laws, stating that "Officer Dean's scope of powers . . . was approved by the school board" and that "Garza County Sheriff's Department will assist . . . the Post ISD Police Department." *Id.* at 19–20. Plaintiffs proffer Exhibit 4-1, which states that the "Garza County Sheriff's Department agree[d] to assist in communication" with PISD, presumably in support of Plaintiffs' contention they should be

allowed to serve Dean by leaving their Complaint at the Sheriff's Office. *See* ECF No. 44, at 3.

Lastly, Exhibit 5 shows Zara's "perfect scores," which Plaintiffs attach ostensibly to show that

Zara never indicated a "hit" during the traffic stop. ECF No. 45, at 24–51; ECF No. 44, at 10–11.

Dean moves to strike these exhibits on the ground that they are "improperly authenticated

hearsay." ECF No. 47, at 1.

All but Exhibit 5 relate to Plaintiffs' contention that service was proper and are therefore

irrelevant to the Court's evaluation of Dean's 12(b)(6) motion. In addition, because Exhibit 5 is

not central to Plaintiffs' claims nor attached to Plaintiffs' Complaint, the Court declines to consider

it as well. Exhibit 5 is "merely evidence" related to Plaintiffs' claims and is not necessary for them

to prevail. For this reason, at the 12(b)(6) stage the Court accepts Plaintiffs' well-pleaded

allegations as true but will not consider the attachment. *See Kaye*, 453 B.R. at 662 (holding that

the court would not consider a report at the 12(b)(6) stage because it was not necessary to establish

an element of any claim but was "merely one piece of evidence that the [plaintiff] relie[d] on to

support his" insolvency allegations); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. Apr. 2023) (Rule 12(b) gives a district court

"complete discretion to determine whether or not to accept the submission of any material beyond

the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.").

### C. Plaintiffs have not pleaded facts sufficient to overcome Defendant's qualified immunity defense.

Dean seeks dismissal of Plaintiffs' unlawful search and fabrication of evidence claims,

contending that he is entitled to qualified immunity as to both. ECF No. 34, at 6–10. Dean asserts

that dismissal is proper as to the unreasonable search claim because the initial traffic stop was

lawful, and Defendant Johnson had reasonable suspicion of additional criminal activity based on

his observation of the bags in the backseat. *Id.* at 8. In Dean's view, this allowed Johnson to call

in Dean—who arrived in minutes—"to conduct an open air sniff on the exterior of Plaintiffs' vehicle." *Id.* Dean alleges that because the initial stop was lawful and a sniff performed by a dog is not a search under the Fourth Amendment, there was no constitutional violation; thus, he is entitled to qualified immunity. *Id.*

In addition, Dean avers that dismissal is proper as to the fabrication of evidence claim because Plaintiffs have not pleaded any non-contradictory facts supporting their claim. *Id.* at 9 & n.3. Further, Dean explains that he did not conduct the search of the vehicle, and Plaintiffs were not deprived of any liberty, as they "were released and never charged with a crime." *Id.* at 9–10. Lastly, Dean states that his actions—walking the dog around the vehicle—were objectively reasonable, entitling him to qualified immunity.

In Plaintiffs' Response, they assert that when "Dean arrived, Plaintiffs were visibly detained," which any reasonable officer would recognize, and a "reasonable K-9 officer would know if the dog detects an illegal substance, the search will expand and the Plaintiff[s] will remain detained." ECF No. 44, at 7. From this, Plaintiffs explain that their claim "against Bobby Dean is the fabrication of evidence he knew would expand the duration of the detention," based on their assertion that Zara never indicated that she detected drugs. *Id.* at 7, 10. In Dean's Reply, he reiterates that even though Plaintiffs do not personally believe that Zara detected drugs, Plaintiffs identify no fabricated evidence and were not charged with any crime, thereby rendering their fabrication of evidence claim non-viable. ECF No. 47, at 8.

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a

defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (describing standard for evaluating defense of qualified immunity when raised in a Rule 12(b)(6) motion); *accord Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) ("Because the officers invoked a qualified immunity defense, the burden shifts to [plaintiff] to show the officers violated his clearly established rights.").

"Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion." *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022). If "the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312. In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. *Club Retro*, 568 F.3d at 194. Under the first prong, a court must decide whether the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. at 236; *see Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019)) (describing the two-part inquiry). Under the second prong, a court must determine whether the constitutional right in question was clearly established at the time of the alleged misconduct. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

A court may use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Solis*, 31 F.4th at 981 ("The court need not decide the first

question before the second, and it may decide the case solely on the basis that the right was not clearly established."). When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, a court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (providing that a plaintiff must "state a claim to relief that is plausible on its face," absent statements that are "no more than conclusions," which "are not entitled to the assumption of truth"). Accordingly, the threshold question here is whether, accepting Plaintiffs' properly pleaded factual allegations as true, Dean violated Plaintiffs' Fourth and/or Fourteenth Amendment rights, and then, if so, whether Dean's actions were objectively unreasonable. *See Backe*, 691 F.3d at 648; *Solis*, 31 F.4th at 981.

### 1. *Unreasonable Search*

Plaintiffs allege an unreasonable search claim and a fabrication of evidence claim, but the basis for both is that their car was searched without probable cause. Compl. 12 (asserting under their "Unreasonable Search" section that "Melton is shown on . . . videos agreeing that a consent to search can lawfully be withdrawn" and "Defendants violated Plaintiff's [sic] . . . rights to be free from unreasonable search of their property such as the rental vehicle and bags inside the vehicle"); *id.* at 12–13 (averring that Zara "did not indicate a scent of drugs" and Johnson and Dean "conspired to fabricate evidence and deprive Plaintiffs of their right to be free from unreasonable search").

It is unclear, however, whether Plaintiffs are claiming Johnson and Melton independently believed Zara did not hit, based on their experience and observation, or that they simply relied on Dean's purportedly false report. *See* Compl. 13 ("Johnson and Defendant Dean conspired to fabricate evidence."); *id.* ("Defendant[s] Johnson and Melton said they didn't know how the dog

indicated the presence of drugs, even though Zara is the only dog the department used at that time"); *id.* at 8 "(Defendant Johnson said 'she hit on the back door.'"). It is also uncertain whether Plaintiffs are asserting only that the search of the vehicle after the "open air sniff" was unreasonable or if they are also claiming that the sniff itself was an unreasonable search and that Johnson did not have reasonable suspicion to call a dog. *See id.* at 12 (asserting that "Defendants violated Plaintiff's [sic] Fourth Amendment rights to be free from unreasonable search of their property" and that Defendants "conspired and worked in tandem to violate Plaintiff's [sic] right to be free from unreasonable searches"). Thus, the Court analyzes the constitutionality of the entire stop, including whether: (1) there was reasonable suspicion to extend the stop and call a dog; (2) the open-air sniff was permissible; and (3) there was probable cause to search the vehicle despite Plaintiffs' assertion that Zara did not alert.

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks and citation omitted). "Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *Anderton v. Tex. Parks & Wildlife Dep't*, No. 3:13-CV-01641-N, 2014 WL 11281086, at *9 (N.D. Tex. Feb. 14, 2014) (internal quotation marks omitted) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). "Traffic stops are considered seizures" under the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001).

### a.    Reasonable suspicion for calling a dog

The circumstances leading to Defendant Dean being called to the scene would seem to bear little, if any, relevance to the constitutionality of Dean's conduct once he arrived. Because,

however, the Court has examined those events in a separate FCR related to Plaintiffs' claims against Defendants Johnson and Melton, that analysis is included herein for continuity and clarity.

The validity of a traffic stop is evaluated using the two-part *Terry* reasonable suspicion inquiry.[6] *United States v. Shen*, 749 F. App'x 256, 259 (5th Cir. 2018) (per curiam); *see United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (noting that the Fifth Circuit, "following the Supreme Court, has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation as *Terry* stops"). First, the court must determine whether the stop "was justified at its inception" and then examine "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Weisshaus*, 637 F. Supp. 3d at 441 (quoting *Brigham*, 382 F.3d at 506); *accord Shen*, 749 F. App'x at 259. A traffic stop solely based on the belief that a traffic violation has been committed "can become unlawful if it is prolonged beyond the time reasonably required" to address the reason for the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "Authority for the seizure ends when tasks tied to the infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). "Therefore, absent reasonable suspicion of additional criminal activity, waiting for or conducting a dog sniff cannot prolong a stop justified by only a traffic violation beyond the amount of time reasonably required to complete the mission of issuing a traffic ticket . . . ." *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016); *see United States v. Castaneda*, No. 1:21-CR-031-H-BU-1, 2021 WL 4079128, at *5 (N.D. Tex. Sept. 8, 2021) ("[A] dog sniff 'is a measure aimed at detecting evidence of ordinary criminal wrongdoing,' 'is not an ordinary incident of a traffic stop,' and, therefore, 'is not fairly characterized as part of the officer's traffic mission.'" (citation omitted)).

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

Reasonable suspicion exists if, based on the totality of the circumstances, the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. "[I]f additional reasonable suspicion arises," "then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006) (quoting *Lopez-Moreno*, 420 F.3d at 430).

Initially, the Court observes that Plaintiffs allege in conclusory fashion that Dean, Melton, and Johnson "conspired and worked in tandem . . . thus making them liable for the others [sic] illegal acts." Compl. 12. Plaintiffs do not, however, assert that Dean was involved in the events leading up to or following the open-air sniff—i.e., the initial traffic stop or the alleged decision to detain Plaintiffs beyond the initial stop. *See id.* at 6, 10–13.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Plaintiffs do not allege that Dean was involved in the determination of whether there was a sound legal basis for conducting an open-air sniff. Dean did not arrive until after Johnson called him and asked for Zara to complete an "open air sniff." Compl. 6–7. He was not the officer who determined whether reasonable suspicion existed and did not participate in the subsequent search, and thus it appears Dean lacks the necessary involvement for any purported constitutional violations occurring up to the open-air sniff. *Id.* at 8 ("Deputy Johnson and Deputy Melton searched all compartments of the vehicle."); *id.* at 12 ("Dean arrived after Plaintiffs were illegally removed [from the vehicle] and detained."); *see Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."); *Ham v. Ward*, No. 3-97-CV-3191-L, 1999 WL 977756, at *3

(N.D. Tex. Oct. 26, 1999) (granting defendant summary judgment because plaintiff did not allege that defendant was physically present or involved during the allegedly illegal search of plaintiff's home).

Alternatively, to the extent Plaintiffs' assertion that upon arrival, Johnson "briefed" Dean by informing him that "he suspected there are some sealed bags . . . from a [THC] dispensary" supplies sufficient personal involvement as to the reasonable suspicion determination (Compl. 7), the Court analyzes it below.

Plaintiffs do not challenge the validity of the traffic stop itself. ECF No. 41, at 9 ("Plaintiff's [sic] have not challenged the lawfulness of the traffic stop for speeding."). They do, however, contend that Johnson and Melton's decision to call a drug dog was "not in furtherance of the initial alleged speeding infraction and" that they were "held against their will" while waiting for the dog. Compl. 6. The Court therefore analyzes whether Johnson and Melton developed additional reasonable suspicion to call the dog and allow Dean to conduct the sniff. At this stage, the Court may only accept Plaintiffs' narrative to determine whether there was reasonable suspicion to call a drug dog. Generally, Plaintiffs allege: (1) it was "around midnight"; (2) Johnson said "he suspected there are sealed bags . . . from a dispensary" that "look[ed] like . . . THC bags"; and (3) Johnson could not "see back there" to determine what was in them. *Id.* at 7.

Based on the totality of circumstances, the undersigned determines that Plaintiffs have not pleaded facts showing Johnson and Melton did not have reasonable suspicion to extend the stop. Plaintiffs state that it was late at night and Johnson saw bags that looked like they were from a dispensary and contained THC but could not dispel his suspicion without calling a dog. *See Alexander v. City of Round Rock*, 854 F.3d 298, 304 (5th Cir. 2017) (listing the time of day as a relevant factor in the reasonable suspicion analysis (citing *United States v. Michelletti*, 13 F.3d

838, 845 (5th Cir. 1994) (en banc) (DeMoss, J., concurring) ("noting that at 2 a.m. 'the overwhelming majority of law-abiding citizens are at home in bed,' unlike the defendant"))); *United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998) (holding that travelling around 1:15 a.m. "may not by itself give rise to reasonable suspicion," but was a "permissible consideration").

In addition, as Plaintiffs allege, Johnson's suspicion was not based on a mere hunch that criminal activity was occurring, but rather a belief that the bags contained THC based on their appearance. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (holding that officers must be allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available"); *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (providing that "reasonable suspicion . . . falls considerably short of 51% accuracy . . . to be reasonable is not to be perfect" (internal quotation marks, brackets, and citations omitted)).

Moreover, while there is not a specific allegation of how long the entire stop lasted, the Court gleans the following from Plaintiffs' Complaint: (1) Johnson saw the bags following the initial stop; (2) Johnson asked Chavez to step out the vehicle and consent to search was given; (3) Melton then ordered Sullivan out of the vehicle; (4) Chavez asked whether she had to consent to the search and then revoked consent after Sullivan answered in the negative; (5) Johnson handcuffed Sullivan and called Dean; (6) Sullivan questioned Johnson's reasonable suspicion for placing him in handcuffs; (7) a "few minutes later" Dean arrived; (8) Dean walked around the vehicle and indicated that Zara alerted; (9) Johnson and Melton searched the vehicle and found nothing; (10) Johnson wrote a warning for speeding; and (11) Plaintiffs were allowed to leave. Compl. 5–9. Based on Plaintiffs' assertions, it appears that, in rather straightforward fashion, Johnson made a valid traffic stop and shortly thereafter observed what he believed to be THC

packages from a dispensary. Following a conversation where consent was given for the search and then withdrawn, during which time Johnson was handcuffed and placed in a squad car, Dean was summoned and arrived "a few minutes later." Johnson alleges no facts indicating Dean, or any other Defendant for that matter, engaged in any conduct intended to or that in fact unreasonably extended the duration of the stop.[7] Thus, based on the facts alleged, there was both reasonable suspicion to extend the stop to call the dog and conduct a sniff, and the detention was continued only for as long as necessary to dispel the additional suspicion. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) (placing no strict time-limit on an investigative detention and instead assessing whether "police diligently pursue[d] their investigation" (quoting *United States v. Place*, 462 U.S. 696, 709 (1983))); *see also United States v. Grant*, No. V-05-151, 2007 WL 677636, at *9 (S.D. Tex. Feb. 28, 2007) (stating that "[s]everal Supreme Court and Fifth Circuit cases instruct that employing a drug dog promptly is generally the most efficient and least intrusive means of investigating hidden narcotics").[8]

### b.    Open-air sniff

Having determined that officers had reasonable suspicion to extend the traffic stop, the Court next considers whether Dean's use of Zara to conduct an open-air sniff violated Plaintiffs'

---

[7] Plaintiffs maintain in their Response that there is a "factual dispute" as to whether Johnson reasonably believed the items were THC bags. *See, e.g.*, ECF No. 41, 5 ("Johnson told Deputy Melton he believed THC would be found."), 7 (averring that Johnson told Dean "[i]t looks like they are THC bags"), 8 (stating that "the black bags inside the" vehicle contained "a pair of shorts"). The Court makes no resolution of potential disputed fact issues at the 12(b)(6) stage—it simply accepts as true any well pleaded facts. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("[C]ourts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."). Although Sullivan disputes Johnson's stated belief, he pleads no facts in the Complaint demonstrating that Johnson's conclusion was unreasonable. Moreover, Plaintiffs' argument that "no THC was located" demonstrates the unreasonableness of the search is without merit. ECF No. 41, at 9; *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (stating that "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight").

[8] As set forth below, Defendants appear to have had probable cause to search the vehicle based simply on Defendant Johnson's observations. *See infra* Section III.C.2.a. If true, such a conclusion would negate any issue related to extending the traffic stop.

Fourth Amendment rights. *See* Compl. 11–12 (alleging that Dean's use of Zara violated their right to be free from an unreasonable search). The undersigned concludes it did not.

An open-air sniff does not constitute a "search" under the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 707 (1983) (concluding that a "sniff discloses only the presence or absence of narcotics, a contraband item" and "d[oes] not constitute a 'search' within the meaning of the Fourth Amendment"); *Caballes*, 543 U.S. at 409 (holding that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests" and "[a]ny intrusion . . . does not rise to the level of a constitutionally cognizable infringement"); *United States v. Moore*, 329 F.3d 399, 404 (5th Cir. 2003) ("[A] dog sniff of a vehicle is not a Fourth Amendment 'search' requiring individualized suspicion."); *Weisshaus*, 637 F. Supp. 3d at 443 ("Free-air sniffs by narcotics-detection dogs are so minimally invasive that they do not constitute a 'search' or a 'seizure' for Fourth Amendment purposes."). Standing alone, Plaintiffs cannot state a cognizable Fourth Amendment claim against Dean based on Zara's open-air sniff.

### c. Probable cause to search the vehicle based on Zara's contested hit

Plaintiffs generally allege an unreasonable search, in part because Chavez withdrew her consent, and more importantly, because Zara purportedly did not alert. Plaintiffs assert, and Dean does not disagree, that Chavez withdrew her consent to search the vehicle before the dog was called, and thus, the search was only reasonable if officers developed probable cause to search their vehicle. *United States v. de La Rosa-Valenzuela*, 993 F. Supp. 466, 470 (W.D. Tex. 1997) (stating that "consent to a search may be revoked . . . if a person effectively withdraws consent" (citing *United States v. Ho*, 94 F.3d 932, 934 (5th Cir. 1996))). Plaintiffs also assert that Dean and other Defendants conspired to fabricate evidence to manufacture probable cause, which led to the

unlawful search. While the ultimate basis of Plaintiffs' unreasonable search and fabrication of evidence claims is that officers did not have probable cause, Plaintiffs more explicitly assert that officers "conspired to fabricate evidence and deprive Plaintiffs of their right to be free from unreasonable search" based on their belief that Dean lied about Zara's alert. Thus, the Court analyzes in the section below whether there was probable cause to search the vehicle despite this belief.

### 2.  *Fabrication of Evidence*

Plaintiffs allege that Dean fabricated evidence by lying about Zara's alert to provide probable cause for the claimed unlawful search. *See* Compl. 12–13. Plaintiffs do not list the constitutional amendment under which they bring their claim, i.e., the Fourth or the Fourteenth Amendment (*id.*), but Dean construes Plaintiffs' claim under the Fourteenth. ECF No. 34, at 9– 10. The Court must therefore first determine the appropriate amendment to analyze Plaintiffs' claim.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Here, the crux of Plaintiffs' claims arises from the facts surrounding the traffic stop, the ensuing detention and search, and whether there was probable cause for the vehicle search, thereby arising under the Fourth Amendment. Claims of fabricated evidence generally give rise to cognizable due process violations only where the false evidence is used to criminally charge the plaintiff. *See Jones v. Perez*, No. 3:16-CV-2835-D, 2017 WL 4238700, at \*10–11 (N.D. Tex. Sept. 25, 2017) (citation omitted) (explaining that where plaintiff relied on the same factual allegations in support of

Fourteenth Amendment substantive due process claim as those for Fourth Amendment claim, i.e., falsification of evidence to support probable cause for arrest, his claim was "covered by the Fourth Amendment and should be analyzed only under that constitutional provision," particularly where plaintiff provided no evidence of deliberate fabrication resulting in a false criminal charge (internal quotation marks omitted)); *cf. Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015) (noting that "[w]here police intentionally fabricate evidence *and successfully get someone falsely charged . . . and the Fourth Amendment is unavailing*, there may be a due process violation" (emphasis added)), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), *opinion reinstated in relevant part*, 935 F.3d 444 (5th Cir. 2019) (en banc). Because Plaintiffs make no such assertion here (*see* Compl. 8–9 (stating that "Johnson located nothing of evidentiary value" and Plaintiffs were "allowed to return to the rental vehicle")), they cannot state a cognizable independent Fourteenth Amendment claim.

### a. Plaintiffs' belief that Zara did not alert

Liberally construing Plaintiffs' allegations, the Court understands Plaintiffs as alleging: (1) Johnson stated he did not know how Zara indicates a hit, Dean signaled or told Johnson and Melton that Zara alerted, and Johnson and Melton (relying on Dean's indication that Zara detected narcotics) searched Plaintiffs' vehicle; and (2) Dean lied about Zara detecting narcotics, which ultimately denied Johnson and Melton probable cause to search. Because Plaintiffs assert that Zara's failure to alert deprived the officers of probable cause, Plaintiffs' claim is properly analyzed under the Fourth Amendment.

An alert by a drug dog establishes probable cause to search a vehicle. *Florida v. Harris*, 568 U.S. 237, 243 (2013). "But a 'full alert' is not required to establish probable cause." *Weisshaus*, 637 F. Supp. 3d at 444 (quoting *United States v. Clayton*, 374 F. App'x 497, 502 (5th

Cir. 2010) (per curiam)). When determining the validity of probable cause established by a K-9 hit, the relevant question "is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Florida*, 568 U.S. at 248. "[E]ven assuming a dog is generally reliable," however, "circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog." *Id.* at 247.

Plaintiffs allege that Dean lied about Zara's alert to manufacture probable cause for a search; however, their allegations are confusing and at times contradictory, and the only affirmative assertion Zara did not in fact alert is Sullivan's conclusory, subjective belief that he "saw no indication of a hit." Compl. 8. As for Plaintiffs' specific allegations, they claim Dean took his K-9, Zara, around the vehicle rented by Plaintiff Sullivan, then walked back to his white truck and said nothing. *Id.* at 7–8. Contradictorily, Plaintiffs later claim that "after the open air search" Dean told Johnson and Melton "yes," apparently in reference to whether Zara hit. *Id.* at 13. Plaintiffs also allege that rather than saying anything, Dean made a gesture such as a nod or thumbs up towards the deputies (*id.* at 8) and threw a tennis ball against the rear driver's side door and gave it to Zara. *Id.* at 13. And while Johnson and Melton purportedly told Sullivan they did not know how the dog indicated the presence of drugs (*id.*), Johnson later told Sullivan Zara hit on the back door. *Id.* at 8.[9]

The Court need not accept as true these contradictory assertions made in relation to the circumstances of how Dean behaved after walking Zara around the vehicle, which render his claim "implausible on its face." *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir.

---

[9] Although Plaintiffs apparently obtained copies of body cam videos worn by various Defendants, they did not attach copies to the Complaint or provide them to the Court to aid in its review of their claims. Compl. 8–9.

2012) (per curiam). While the Court typically liberally construes Plaintiffs' allegations in their favor at this stage, it is difficult to reconcile these differing and at times contradictory explanations of how Dean reacted after walking Zara around the vehicle. Compl. 8 (Dean "walked back to his . . . truck and said nothing," but then "made a gesture" with "a nod or thumbs up towards the deputies."); *id.* at 13 ("Dean threw a tennis ball against the rear driver's side door and gave it to Zara."); *id.* (Dean said "[y]es" to Johnson and Melton, giving them the go-ahead to search Plaintiffs' vehicle.).

Because Plaintiffs' factual allegations present no clear, non-contradictory account stating a violation of constitutional law, the Court is left with their mere assertion that, based on their "experience" and "observations," Zara did not "unambiguously" alert. *Id.* at 12–13. Plaintiff Sullivan states he was "audibly surprised" when Dean said that Zara alerted, as "no indication was observed" from his perspective. *Id.* at 8. Plaintiffs' mere belief,[10] however, that Zara did not alert does not establish a constitutional violation under the Fourth Amendment.[11]

Setting aside Plaintiffs' vague and contradictory allegations, this claim suffers a more fundamental and potentially fatal flaw. Plaintiffs allege that Johnson's initial observation of what he believed to be "sealed bags . . . from a [THC] dispensary" began the chain of events that ultimately culminated in the alleged unlawful search of his car. *Id.* at 7. Assuming, for whatever

---

[10] Plaintiffs' assertions present other practical issues as well. Because whether a dog alerts is presumably interpreted by its handler, it seems irrelevant that Johnson initially said he did not know how Zara indicated but then stated she did show a hit, allegedly *after* Dean, Zara's handler, either gestured or told Defendants she did alert. Moreover, Plaintiffs have neither pleaded facts showing that it was unreasonable for Defendants to rely on Dean's interpretation nor demonstrating that they were aware of or agreed to his false report.

[11] While likely needing factual development, e.g., possibly a motion for summary judgment, a dog's failure to "formerly alert" does not preclude immunity. *See, e.g., Weisshaus*, 637 F. Supp. 3d at 444. The Fifth Circuit has found that even absent a physical reaction—e.g., sitting or barking—from the dog, indicating that it senses drugs, probable cause may still exist. *Shen*, 749 F. App'x at 261 ("Evidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause." (quoting *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013))); *United States v. Parada*, 577 F.3d 1275, 1281–82 (10th Cir. 2009) (declining to adopt a rule "which would require the dog to give a final indication before probable cause is established").

reason, that Zara did not legitimately "hit" on Plaintiffs' car, such a "non-alert" does not destroy probable cause to search a vehicle without a warrant *if probable cause exists on other grounds*. *United States v. Villafranco-Elizondo*, 897 F.3d 635, 645 (5th Cir. 2018) (holding that a K-9's failure to alert does not eliminate existing probable cause); *see United States v. Williams*, 124 F. App'x 885, 887 (5th Cir. 2005) (per curiam) (concluding that where totality of circumstances showed "officers had probable cause to search the vehicle prior to the arrival of the drug dog . . . the failure of the drug dog to alert did not deprive the officers of probable cause to search the vehicle").

"Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain items may be contraband or . . . useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citations omitted). Moreover, "searches and seizures based on mistakes of fact can [nevertheless] be reasonable." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014); *see Carr v. Hoover*, 837 F. App'x 279, 284 (5th Cir. 2020) (per curiam) (recognizing that "the Fourth Amendment permits both reasonable mistakes of law and fact" (citing *Heien*, 574 U.S. at 61)).

According to Plaintiffs, Johnson stated he believed he observed contraband in plain sight in their vehicle. Compl. 7. Because Plaintiffs do not allege they faced charges as a result of the stop, the Court presumes for 12(b)(6) purposes Johnson was incorrect in his belief that the items, based on their packaging and appearance, originated from a dispensary and contained THC. Plaintiffs, however, allege no facts in their Complaint demonstrating that Johnson's belief was unreasonable. As pleaded, Johnson's mistake of fact does not negate a finding of probable cause. *See Brown*, 460 U.S. at 742–43 (finding officer had sufficient probable cause to seize item in plain

view in defendant's car where, *inter alia*, "the distinctive character of the balloon itself spoke volumes as to its contents," despite the officer's inability to "see through the opaque fabric"); *Carr*, 837 F. App'x at 284 (finding officer has probable cause to effectuate warrantless arrest where he observed Sudafed boxes in plain view on truck's console and reasonably, but mistakenly, believed such boxes contained a precursor for manufacturing methamphetamine).

The undersigned finds that despite the foregoing deficiencies in Plaintiffs' Complaint, the possibility remains that Plaintiffs could conceivably state a constitutional violation under the Fourth Amendment should they be given leave to amend. The undersigned recommends that Plaintiffs be given one opportunity to plead facts, not simply conclusions, that plausibly state a constitutional violation.

### b.    Clearly established law

In addition, Plaintiffs fail to meet their burden in showing that Dean violated clearly established law. *See Washington v. Smith*, 639 F. Supp. 3d 625, 639 (E.D. La. 2022) (noting that plaintiff has the burden to point out the clearly established law (quoting *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019))). Plaintiffs appear to have merely copied and pasted general rules from cases in their Response to Dean's assertion of qualified immunity. ECF No. 44, at 6–9; *see Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) ("Clearly established law is not to be defined at a high level of generality."); *Thompson v. Richter*, No. 7:22-cv-00014-O, 2023 WL 348017, at *5 (N.D. Tex. Jan. 11, 2023) (concluding K-9 officer was entitled to qualified immunity where plaintiffs cited "no caselaw to suggest that it was unreasonable for [K-9 officer] to rely on [initial officer's] determination of reasonable suspicion to call for the K-9 search"). Because the undersigned has recommended that Plaintiff be given leave to amend to provide a final opportunity to allege facts plausibly stating a constitutional violation, any new non-conclusory facts the Court may be required to consider could, in theory, impact the "clearly established" analysis. For that

reason, and despite Plaintiffs' failure to carry their burden at this juncture, the undersigned would recommend re-examining this issue in the event Plaintiffs replead.

### 3. Conspiracy

It is unclear whether Plaintiffs intend to bring a conspiracy claim against Dean because Plaintiffs only conclusorily reference a "conspiracy" and it is not specifically separated into its own section like every other claim in Plaintiffs' Complaint.[12] *See* Compl. 11–13. The Court will, however, liberally construe their claims to include conspiracy. *See id.* Plaintiffs allege that Dean, Johnson, and Melton "conspired and worked in tandem to violate Plaintiff's [sic] right to be free from unreasonable searches" and that "[t]hese unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property." *Id.* at 12. In addition, Plaintiffs contend that Johnson and Dean "conspired to fabricate evidence and deprive Plaintiffs of their right to be free from unreasonable search." *Id.* at 13.

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *see Young v. Biggers*, 938 F.2d 565, 566 (5th Cir. 1991) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987))); *Chadman v. Quisenberry*, No. 4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require that the

---

[12] Dean also does not address the conspiracy allegations in his Motion to Dismiss or Reply, nor is it mentioned in Plaintiff's Response. *See* ECF Nos. 34, 44, 47.

claimant relate specific facts."). "Therefore, to establish [their] conspiracy claim, [Plaintiffs] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate [their] federal civil rights." *Montgomery*, 759 F. App'x at 314. In addition, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *accord Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No [constitutional] deprivation, no § 1983 conspiracy.").

Plaintiffs' allegations are insufficient to state a viable conspiracy claim. As discussed above, Plaintiffs have not pleaded sufficient facts to show that Dean violated their Fourth Amendment rights, nor have they provided specific facts demonstrating that Defendants agreed to such action. Plaintiffs simply allege that Defendants "conspired and worked in tandem" to violate their constitutional rights, without providing any detail as to the what or how of any agreement Dean made with any other Defendant to commit such acts. As such, the undersigned finds that Plaintiffs' claim fails. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (per curiam) (affirming dismissal of plaintiff's conspiracy claim because he did not state an underlying constitutional violation and his claims were conclusory); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (dismissing conspiracy claim because plaintiff did not "set forth specific allegations that [defendants] agreed to commit an illegal act" (citation omitted)); *Doss v. City of DeSoto*, No. 3:19-cv-00408-S-BT, 2020 WL 1216716, at *3 (N.D. Tex. Feb. 18, 2020) (recommending dismissal of plaintiff's conspiracy claim because he merely alleged that defendants "'conspired' to ruin his life," which was insufficient to state a claim), *R. & R. adopted by* 2020 WL 1187174 (N.D. Tex. Mar. 11, 2020). Because, however, the undersigned recommends that Plaintiffs be given an opportunity to cure previously identified shortcomings in their Complaint, the

undersigned again recommends that Plaintiffs be given leave to amend concerning any conspiracy claim they attempt to assert.

### D. Plaintiffs' Representation Status and Signatures

"Dean requests clarification as to the nature of the relationship between the Plaintiffs" and, "[o]n an independent basis[,] . . . requests dismissal of all claims asserted by Plaintiff Chavez." ECF No. 47, at 9. In support of this request, he contends: (1) despite claiming to be pro se plaintiffs, the name and address of "the plaintiff or the plaintiff's attorney on whom the answer or motion must be served in the citation in this matter" only included Sullivan's contact information, not Chavez's; (2) Sullivan "is not licensed in the State of Texas, nor is he admitted to practice in the Northern District of Texas, nor has he applied for pro hac vice admission"; (3) Sullivan is "merely electronically signing Plaintiff Chavez's name to his pleadings . . . to circumvent representation and admission requirements"; and (4) Plaintiff Chavez has not responded to Dean's Motion to Dismiss as a result of Sullivan's unlawful attempts to represent Chavez. *Id.* at 9–10.

The undersigned agrees that the nature of Plaintiffs' representation status is unclear and suspect. Rule 11(a) requires "[e]very pleading, written motion, and other paper be signed . . . by a party personally if the party is unrepresented." FED. R. CIV. P. 11. Both Plaintiffs' individual physical addresses, email addresses, phone numbers, and signatures are on the Complaint, but in Plaintiffs' Response both Plaintiffs only include an electronic signature. Compl. 17; ECF No. 44, at 11. In fact, every document filed by Plaintiffs, except the Complaint, contains only an electronic signature of both Plaintiffs or no signature at all. *See* ECF Nos. 8–16, 39–45. As Dean points out, the summons for Defendants only includes Sullivan's name and address as to the "plaintiff or plaintiff's attorney" that "[t]he answer or motion must be served on." ECF Nos. 10–13.

At this time, however, the Court cannot conclude that Plaintiffs' case should be dismissed, either for non-compliance with the signature requirement or Chavez not responding to the instant motion. *See Minze v. King*, No. 3:17-cv-2320-L-BT, 2018 WL 5885544, at *2 (N.D. Tex. Aug. 30, 2018) ("When an opposing party fails to respond to a motion requiring a response, the Court may deem the motion unopposed. But, that lack of opposition does not result in the Court automatically granting the motion . . . without regard to the merits of the case."), *R. & R. adopted as modified by* 2018 WL 6329776 (N.D. Tex. Dec. 3, 2018); *McGraw v. Gore*, 31 F.4th 844, 854 (4th Cir. 2022) (Plaintiff "should not suffer dismissal of [his] case for nonobservance of the signature rule." (brackets and internal quotation marks omitted) (quoting *Becker v. Montgomery*, 532 U.S. 757, 765 (2001))). Instead, Plaintiffs must be given an opportunity to correct it "by signing the paper on file or by submitting a duplicate that contains the signature." *Becker*, 532 U.S. at 764 (quoting FED. R. CIV. P. 11 advisory committee's notes to 1993 amendment). Plaintiffs are cautioned that "[t]he [C]ourt must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." FED. R. CIV. P. 11(a).

In addition, it is axiomatic that Sullivan, an attorney apparently not admitted to practice either in Texas or before this Court, cannot represent Chavez. *See Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 477 (N.D. Tex. 1975) (holding that there are only "two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself"); *Guajardo v. Luna*, 432 F.2d 1324, 1324 (5th Cir. 1970) (per curiam) (affirming judgment holding that a petitioner who "is not an attorney at law admitted to practice before any of the courts of the State of Texas nor . . . a member of the State Bar of Texas" could not represent a third party). Thus, absent proof of Sullivan's good standing to appear in this Court on behalf of others, he cannot represent Chavez herein on the claims alleged. *See Raskin ex rel.*

*JD v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 284 (5th Cir. 2023) (holding that pro se representation of another person is allowed only in certain circumstances, such as when federal or state law designates a child's case as a parent's "own"). The undersigned therefore recommends that Plaintiffs be given a chance to amend their Complaint to address the deficiencies described above, including their failure to comply with Rule 11 signature requirements and clarifying Sullivan's role, if any, in attempting to represent Chavez.

## IV.    **Leave to Amend**

Plaintiffs have not requested leave to amend their Complaint. Nevertheless, the Fifth Circuit has observed that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Because the undersigned cannot conclude, at this stage, that amendment of Plaintiffs' unreasonable search, Fourth Amendment fabrication of evidence, and conspiracy claims would be futile, nor have Plaintiffs indicated they are unwilling to amend, Plaintiffs should be provided an opportunity to amend their Complaint.[13]

## V.    **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Judge provide Plaintiffs **fourteen days after any order adopting this recommendation** to (1) amend their claims, (2) serve Dean with the amended complaint, and (3) correct the deficient signatures on their filings. Should Plaintiffs amend their claims and serve Dean with an amended

---

[13] At this stage, the Court draws no distinction between Plaintiffs' Fourth Amendment unreasonable search and fabrication of evidence claims for purposes of allowing further amendment. *See supra* Section III.C.1.c, C.2.

complaint, the undersigned recommends that the United States District Judge **DENY** Dean's 12(b)(5) and 12(b)(6) Motions as moot.

Should Plaintiffs amend their claims and serve Dean with an amended complaint but fail to correct the deficient signatures on the filings identified herein, the undersigned recommends that those filings be stricken as to Plaintiff Chavez.

In the event Plaintiffs elect not to amend their complaint but instead re-serve Dean with the extant Complaint, the undersigned recommends that the United States District Judge (1) **DENY** Dean's Rule 12(b)(5) Motion and (2) **GRANT** Dean's Rule 12(b)(6) Motion and dismiss Plaintiffs' Complaint.

Finally, should Plaintiffs stand pat and neither amend nor re-serve their Complaint, the undersigned recommends that the United States District Judge (1) **GRANT** Dean's Rule 12(b)(5) Motion and (2) **DENY** his Rule 12(b)(6) Motion as moot.

## VI.    Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996).

Dated: November ____3____, 2023.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**