IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOSEPH SULLIVAN and MONICA CHAVEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 5:23-CV-049-H-BQ |
| GARZA COUNTY SHERIFF'S OFFICE, *et al.*, | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Derek Johnson and Samuel Melton's Motion to Dismiss under Rule 12(b)(5) and (6), and brief and appendix in support. ECF Nos. 28, 29. Pro se Plaintiffs Joseph Sullivan and Monica Chavez filed a response and Defendants filed their reply. ECF Nos. 41, 49. The motion is now ripe for decision.

After reviewing the motion and applicable law, the undersigned recommends that the United States District Judge: (1) dismiss with prejudice Sullivan's excessive force and battery claims, as well as the bystander liability claim against Melton based on those claims; and (2) provide Plaintiffs fourteen days after any order adopting this recommendation to (a) amend their conspiracy, bystander liability, unreasonable search, *de facto* arrest, First Amendment retaliation, and fabrication of evidence claims, and (b) serve Melton and Johnson with the amended complaint. Should Plaintiffs amend their claims and serve Defendants with an amended complaint, the undersigned recommends that the United States District Judge **DENY** Defendants' 12(b)(5) and 12(b)(6) Motions as moot. Alternatively, should Plaintiffs elect not to amend their Complaint but instead properly serve Defendants with the extant Complaint, the undersigned recommends

that the United States District Judge (1) **DENY** Defendants' Rule 12(b)(5) Motion and (2) **GRANT** Defendants' Rule 12(b)(6) Motion and dismiss Plaintiffs' Complaint.[1]

## I.     Background

### A. Plaintiff's Factual Allegations

For the purpose of evaluating Melton and Johnson's Motion to Dismiss, the Court accepts as true the following narrative from Plaintiffs' Complaint. Plaintiffs assert that on May 8, 2021, Defendant Deputy Derek Johnson stopped them for a speeding violation in Post, Texas. Compl. 5, ECF No. 1.[2] Defendant Deputy Samuel Melton soon arrived on scene, and Johnson informed him that he suspected Plaintiffs had THC inside their vehicle. *Id.* Johnson requested permission from Chavez to search the car. *Id.* Chavez, who was driving at the time, initially consented. *Id.* Plaintiffs allege that Melton then asked Sullivan to step out of the vehicle, without "consent" or "reasonable suspicion." *Id.* Sullivan informed officers that the vehicle was a rental, and he was the lessee of the vehicle, not Chavez. *Id.* Sullivan further told Chavez she should not consent to the search, which she subsequently withdrew. *Id.*

Plaintiffs further aver that: (1) Sullivan was then unlawfully handcuffed and detained in the back of the deputy's car; and (2) "Deputy Johnson stated it did not matter that Sullivan had rented the vehicle, and that Sullivan should" not have influenced Chavez's consent decision, "because Sullivan is an attorney." *Id.* at 5–6. Chavez again consented to the search, but Johnson stated he would "call a dog," believing that Chavez had withdrawn her consent. *Id.* at 6. Plaintiffs allege that they were held against their will while waiting for the dog to arrive. *Id.* While waiting,

---

[1] In the unlikely event Plaintiffs neither amend nor re-serve their complaint, the undersigned recommends that the United States District Judge (1) **GRANT** Defendants' Rule 12(b)(5) Motion and (2) **DENY** their Rule 12(b)(6) Motion as moot.

[2] Page citations Plaintiffs' pleadings refer to the electronic page number assigned by the Court's electronic filing system.

"Sullivan was allowed to step out of the law enforcement vehicle" and "discuss[ed] . . . what was ta[]king place at that moment." *Id.* at 7. Defendant Sergeant Bobby Dean arrived "a few minutes later" with his K-9, Zara, and Johnson "informed . . . Dean he suspected there are some sealed bags" in the back of the vehicle that "look[ed] like . . . THC bags," but because they were "sealed," he could not "see back there." *Id.* Dean then walked Zara around the vehicle and Sullivan saw "no indication of a 'hit.'" *Id.* at 8. Plaintiffs assert that Dean, however, "walked back to his . . . truck and said nothing," but then "made a gesture" with "a nod or thumbs up towards the deputies." *Id.* Dean "said nothing" because he was "previously told to not say anything around Plaintiff Sullivan." *Id.* Johnson then said, "'she hit on the back door,' although he had previously stated he did not know how Zara indicated a scent of drugs." *Id.* Later in their Complaint, Plaintiffs contradictorily claim that after walking Zara around the vehicle, "Dean threw a tennis ball against the rear driver's side door and gave it to Zara" and then said "[y]es" to Johnson and Melton, giving them the go-ahead to search Plaintiffs' vehicle. *Id.* at 13. Johnson and Melton proceeded to search "all compartments of the vehicle" and found nothing incriminating. *Id.* at 8–9. Sullivan was then un-cuffed and allowed to return to the vehicle, and Johnson gave Chavez a warning for the speeding infraction. *Id.* at 9.

Plaintiffs allege Defendants violated their First and Fourth Amendment rights by: (1) Johnson and Melton illegally seizing, falsely detaining, and falsely arresting Plaintiffs; (2) Johnson and Melton illegally searching the vehicle after Chavez withdrew consent; (3) Johnson fabricating evidence by lying about the K-9's indication of drugs to establish probable cause; (4) Johnson's use of excessive force in handcuffing Sullivan; (5) Johnson's deprivation of Plaintiffs' First Amendment rights; (6) Johnson committing battery on Sullivan when he placed Sullivan in handcuffs without consent; and (7) "conspir[ing] and work[ing] in tandem" "to violate

Plaintiff's [sic] right to be free from unreasonable searches, thus making them liable for the others [sic] illegal acts." *Id.* at 11–15. Plaintiffs also allege that in relation to every constitutional claim, Melton "acted with deliberate indifference to the illegal acts of Defendant Johnson" and "had a duty to intervene and protect Plaintiffs [sic] right[s]." *Id.* at 11–15. Plaintiffs sue Defendants in their individual capacities and seek money damages. *Id.* at 4, 16.

### B. Parties' Arguments

Defendants filed a Motion to Dismiss on July 27, 2023, contending dismissal is appropriate because: (1) Plaintiffs failed to properly serve Defendants under Federal Rule of Civil Procedure (FRCP) 4 and Texas Rule of Civil Procedure (TRCP) 106; and (2) Defendants are entitled to qualified immunity. ECF No. 28, at 1, 8. Defendants assert as grounds for 12(b)(5) dismissal that Plaintiffs' process server improperly left suit papers with Administrative Assistant Melinda Quintana, and Garza County Attorney Ted Weems, "when Deputy Johnson was no longer an employee of Garza County, and Deputy Melton was not on duty or present." *Id.* at 1. Neither of these individuals "were . . . authorized to accept service for Defendants and were not agents for Defendants." *Id.* at 2. Plaintiffs also "did not deliver a copy of the summons and complaint to the individual defendants," nor did they "leave a copy at their dwellings . . . with someone who resides there." *Id.* at 7–8. Defendants conclude that because Plaintiffs failed to properly serve them and the time for serving Defendants has now passed, the Court should dismiss the suit. *Id.* at 9. In support of their Rule 12(b)(5) motion, Dean attached declarations from Quintana and Weems setting forth the facts surrounding Plaintiffs' attempted service. ECF No. 29.[3]

Defendants contend that dismissal under Rule 12(b)(6) is also proper because they are entitled to qualified immunity. ECF No. 28, at 1. Defendants assert that they did not violate any

---

[3] The Court may consider declarations in resolving 12(b)(5) motions. *Gray v. Cleco Power, LLC*, No. 5:19-CV-00706, 2020 WL 2134139, at *2 (W.D. La. May 4, 2020).

of Plaintiffs' constitutional rights because the "stop was based on a speeding violation," the "investigation continued" after Johnson saw the "THC bags, and based on a canine hit the car was searched." *Id.* at 10. Further, it was not a constitutional violation and was objectively reasonable for Defendants to make Chavez "stand outside of her vehicle and" handcuff and place Sullivan in the patrol car. *Id.* And Dean "took only a few minutes to arrive at the scene." *Id.*

Plaintiffs maintain that service of process was proper because Johnson was, and Melton is, employed by "the Garza County Sheriff's Office and has a duty to report" there. ECF No. 41, at 1–2. But they also ask this Court to find that "Melton and . . . Johnson can be properly served by email." *Id.* at 1. In addition, they ask the Court to find Melton and Johnson "can be served by leaving a copy of the complaint with the Garza County Administrative Assistant under [TRCP] 106(b)." *Id.* at 2 (emphasis omitted). Plaintiffs assert "all parties agree [that] . . . Quintana received summons for Defendant[s]" and that "Melton must report personally to the Garza Law Enforcement Center." *Id.* at 3. According to Plaintiffs, "[t]hese actions . . . [were] reasonably effective to give defendant[s] notice of the lawsuit." *Id.* Further, "[e]ven if Deputy Johnson was no longer an employee, which Plaintiff's [sic] do not stipulate to, he may have still been in contact with the Garza County Sheriff's Department," and Plaintiffs "demand proof of his loss of employment and . . . any official correspondence between Deputy Johnson and . . . [the] Sheriff's Office after July 7[], 2023." *Id.*

In support of their request to serve Melton by email under 106(b), Plaintiffs state that they emailed Melton at his "listed email address at the Department." *Id.* at 4. In addition, they ask this Court to find Melton and Johnson can be served through Weems, if he "is authorized by appointment and/or law to accept service under" Rule 4. *Id.* at 5. Alternatively, Plaintiffs request

an additional forty-five days to perfect service. *Id.* at 6. They assert that they made "good faith efforts to request waivers" as the basis of this request. *Id.*

In response to Defendants' qualified immunity defense, Plaintiffs mostly copy and paste general rules relating to § 1983 cases, the 12(b)(6) standard, and Fourth Amendment law. *Id.* at 6–9. They argue that while they "have not challenged the lawfulness of the traffic stop," they dispute "the assertion Deputy Johnson saw 'THC bags'" because no "reasonable officer would believe a small black unsealed bag contained THC. There were no markings on the bag. The bag was not sealed." *Id.* at 9.[4] Plaintiffs aver that their "position is supported by the undisputed fact no THC was located." *Id.* Plaintiffs "also dispute that a 'canine hit' occurred" because "Johnson did not know how a hit was indicated" even though "this was the only police canine in the community," and "Sullivan observed no indication of a hit." *Id.* Plaintiffs allege "that this information was intentionally fabricated" and that Defendants' Motion "does not specifically address [the] Fabrication of Evidence allegation." *Id.* at 9–10. Plaintiffs contend that they exercised their First Amendment right and "were deprived of liberty as a result." *Id.* at 10. Lastly, Plaintiffs argue in their Response that Defendants do not address their fabrication of evidence or First Amendment claims. *Id.* Plaintiffs attach six exhibits in support of their Response, most of which relate to the service issue. ECF No. 42.

In Defendants' Reply, they argue that "Plaintiffs' [service related] 'motions' are not properly before this Court" under "Local Rule 5.1(c) because the motions were not identified in the title of Plaintiffs' Response." ECF No. 49, at 1. In addition, they assert that Plaintiffs' motion to serve Weems as an agent of Defendants is without merit because under Texas law, "service on an attorney will not constitute service on a client unless the person to be served has expressly

---

[4] Importantly, Plaintiffs make these assertions in their response to Defendants' motion, not in the Complaint.

authorized the attorney to receive process." *Id.* at 2 (quoting 2 William V. Dorsaneo III, *Texas Litigation Guide* § 31.02[2][a]). Defendants maintain they have not authorized Weems or Quintana to accept service. *Id.* at 2–3. Defendant Johnson also alleges that he no longer works for Garza County and cannot be served through the county. *Id.* at 2.

Defendants reiterate that service was not proper under Rule 4 because Plaintiffs did not personally serve them or leave a copy with someone at their residence, and service at their place of employment does not qualify as their "residence." *Id.* at 3–4. They also argue that service was improper under Texas law, and that Plaintiffs cannot retroactively motion for substitute service under Rule 106(b). *Id.* at 5. Without showing due diligence to personally serve Defendants or that Defendants monitor their email addresses, Plaintiffs cannot establish that service by email provides proper notice. *Id.* at 6–7. Moreover, Defendants observe that Plaintiffs' emails were sent on March 24 and April 6, 2023, *before* the summons were requested and issued, and thus, there is "no way" the "complaint and the summons" were included in the email. *Id.* at 7. Lastly, Defendants argue service was improper because Sullivan sent the email, while TRCP 103 requires that a *non-party* serve the summons and complaint. *Id.* at 7–8.

As to their 12(b)(6) motion, Defendants repeat that they are entitled to qualified immunity on all causes of action and that Plaintiffs fail to meet their burden to demonstrate inapplicability of the defense. *Id.* at 9. They maintain that Plaintiffs fail to articulate a constitutional violation or establish that Defendants' actions were unreasonable under clearly established law. *Id.* at 9–10.

## II.    Legal Standards

### A.  Motion to Dismiss under Rule 12(b)(5)

A motion to dismiss under Rule 12(b)(5) challenges the method or lack of service. *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 745 (N.D. Tex. 2013). A court cannot

exercise jurisdiction over a defendant who is not properly served. *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 906–07 (5th Cir. 1995). After a defendant contests the validity of service, plaintiff bears the burden of establishing its legitimacy or good cause for failure to effect timely service. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (per curiam) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)); *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (citing *Sys. Signs Supplies v. U.S. Dep't of Just., Wash., D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). To establish good cause, "simple inadvertence or mistake of counsel . . . usually does not suffice and some showing of 'good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time period' is normally required." *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985) (emphasis omitted) (quoting 10 WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE: CIVIL § 1165). A pro se plaintiff is not excused from the requirement to accomplish proper service of process. *Sys. Signs Supplies*, 903 F.2d at 1013.

### B. Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v.*

8

*SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility"). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.    Discussion

**A. Plaintiffs have failed to effect proper service on Johnson and Melton.**

This Court previously entered an order providing Plaintiffs 120 days to complete service and advising that failure to do so would result in "dismissal without prejudice unless Plaintiffs show good cause for (1) their failure to timely and properly effect service and (2) the Court to extend the time for service." ECF No. 7, at 1. Summons was returned executed as to Johnson and Melton on July 7, 2023, exactly 120 days from the date Plaintiffs filed their Complaint. ECF Nos. 1, 20, 23. Defendants contend that service was attempted on County Attorney Ted Weems and the Sheriff's Office's Administrative Assistant, Melinda Quintana, who are both improper agents for service. ECF No. 28, at 4. Defendants explain that Quintana and Weems have "not been delegated authority . . . to accept service of process for the individual Defendants." *Id.* Quintana apparently informed the process server that she was not authorized to accept service but the server nevertheless left the documents. *Id.*

Plaintiffs maintain that service of process was proper because Weems "lawfully accept[ed] service for" Melton and Johnson, and Melton is "employed at Garza County Sheriff's Office and has a duty to report to the location where the Plaintiff's [sic] Complaint for Damages was served." ECF No. 41, at 1, 3–5 (emphasis omitted). Plaintiffs, however, "also motion this Court to find . . . Melton and . . . Johnson can be properly served by email" and "to find Garza County Attorney Ted Weams [sic] is an authorized agent . . . to accept service on behalf of Deputy Melton and Deputy Johnson." *Id.* at 1–2. In addition, Plaintiffs "motion to find that Samuel Melton and Deputy Johnson can be served by leaving a copy of the complaint with the Garza County Administrative Assistant under Rule 106(b) of the Texas Rules of Civil Procedure." *Id.* at 2 (emphasis omitted). Alternatively, Plaintiffs request an additional forty-five days to perfect service. *Id.* at 5–6. They assert that they made "good faith efforts to request waivers" in support, but do not otherwise attempt to show good cause. *Id.* at 6. Defendants oppose Plaintiffs' retroactive request to serve them under TRCP 106(b) or by email and restate that Weems and Quintana cannot accept service on behalf of Defendants. ECF No. 49, at 1–8.

Rule 4(e) requires that service on an individual be accomplished by following state law for serving a summons or: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service." FED. R. CIV. P. 4(e). Under Texas law, a plaintiff may accomplish service as follows:

(a) Unless the citation or court order otherwise directs, the citation must be served by:

(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or

10

(2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition.

(b) Upon motion supported by a statement--sworn to before a notary or made under penalty of perjury--listing any location where the defendant can probably be found and stating specifically the facts showing that service has been attempted under (a)(1) or (a)(2) at the location named in the statement but has not been successful, the court may authorize service:

(1) by leaving a copy of the citation and of the petition with anyone older than sixteen at the location specified in the statement; or

(2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106.

Plaintiffs do not meet their burden of establishing valid service on Defendants under federal or state law. They merely allege that service on Weems and Quintana was proper because Melton "is employed at the Garza County Sheriff's Office" and "Johnson was an employee," without offering any proof Defendants authorized Weems or Quintana to accept service. ECF No. 41, at 1–5; *see Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2013 WL 4874115, at *2 (N.D. Tex. June 28, 2013) (finding that service was not proper under Rule 4(e)(2)(C) because plaintiff did not allege that the person served was defendant's authorized agent for service of process); *Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 1778192, at *2 (N.D. Tex. May 5, 2014) (concluding that "[p]laintiff . . . produced no evidence showing that the Assistant City Attorney was an authorized agent to accept service for any of the individual defendants").

And while it appears Plaintiffs ask this Court to give retroactive effect under Rule 106(b) to their attempted service, they fail to demonstrate compliance with the rule's antecedent conditions *prior to* their service attempt. *See* Tex. R. Civ. P. 106(b); ECF No. 41, at 2–4; *see also* ECF Nos. 44, 45. Plaintiffs assert that they served Quintana where Defendants "can probably be

11

found" and their process server wrote on the Proof of Service that she left the papers at the "Garza County Law Enforcement Center Bldg." after Quintana told her that the Sheriff was not in. ECF No. 41, at 3. They also state that they emailed Johnson and Melton a copy of the Complaint, which is "reasonably effective to give defendant[s] notice of the lawsuit." *Id.* at 4. Plaintiffs' failure to obtain Court authorization for substituted service, along with the lack of a sworn statement, renders their attempted service invalid. *See State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298–99 (Tex. 1993) ("Under Rule 106(b) a court may authorize substituted service only after a plaintiff has unsuccessfully tried to effect personal service or service by certified mail, return receipt requested, as required by Rule 106(a)."); *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.) (stating that "[s]trict compliance is particularly important when substituted service under rule 106 is involved," because "[w]hen a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself"); *Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 921 n.3 (5th Cir. 2021) (per curiam) (acknowledging that "[t]he two additional methods of service under Rule 106(b) [were] inapplicable to th[e] action since the district court did not authorize service via those methods"); *Galindo v. Completion Equip. Rental, Inc.*, No. 20-CV-00260-DC-RCG, 2022 WL 2761745, at *3 (W.D. Tex. Apr. 7, 2022) (concluding plaintiff failed to properly serve defendant in accordance with Texas law, where plaintiff did not accomplish service "by either means given in § 106(a)" and "submitted no motion to th[e] [c]ourt requesting substituted service"), *R. & R. adopted by* 2022 WL 2761739 (W.D. Tex. Apr. 25, 2022).

Service of process on Quintana and Weems was improper and the 120-day deadline for serving process has expired. Plaintiffs have not shown good cause for failing to properly serve Johnson and Melton. They merely assert that "good faith efforts were made to request waivers."

ECF No. 41, at 6; *see Winters*, 776 F.2d at 1306 (stating that "simple inadvertence," mistake, and

"ignorance of the rules" are generally all insufficient to establish good cause).

Ordinarily, dismissal for insufficient service is not appropriate "unless 'there is no

reasonably conceivable means of acquiring jurisdiction over the person of a defendant'" and "is

usually without prejudice to allow plaintiff an opportunity to effect proper service." *Florance v.

Buchmeyer*, 500 F. Supp. 2d 618, 633 (N.D. Tex. 2007) (citation omitted). Because the incident

that forms the basis of this suit occurred on May 8, 2021, more than two years ago, a dismissal

without prejudice operates as a dismissal with prejudice.

> [T]he statute of limitations for a suit brought under § 1983 is determined by the
> general statute of limitations governing personal injuries in the forum state. Texas
> has a two year statute of limitations for personal injury claims. Under our law, the
> limitations period begins to run when the plaintiff knows or has reason to know of
> the injury which is the basis of the action. The plaintiff must know of the injury and
> the causal connection between the defendant and the injury.

*Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (internal quotation marks and

citations omitted). "Where further litigation of a claim will be time-barred, a dismissal without

prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard of

review is used." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (brackets

omitted) (quoting *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981));

*see Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016). Because a

dismissal with prejudice is an "extreme sanction," the Fifth Circuit has limited the district court's

discretion in dismissing cases with prejudice. *Berry*, 975 F.2d at 1191 (citation omitted). At least

one of three "aggravating factors" must be present to justify such a dismissal: (1) delay caused by

the plaintiff himself and not his attorney; (2) "actual prejudice to the defendant; or (3) delay caused

by intentional conduct." *Kidd v. Monroe Transit Sys.*, No. 3:19-CV-01596, 2021 WL 537100, at

*6 (W.D. La. Jan. 28, 2021) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)), *R.*

13

& R. *adopted by* 2021 WL 536136 (W.D. La. Feb. 12, 2021). "This standard of review applies

when a case is dismissed for failure to effect service." *Coleman v. Carrington Mortg. Servs., LLC*,

No. 4:19-CV-00231-ALM-CAN, 2021 WL 1725523, at *3 (E.D. Tex. Apr. 21, 2021), *R. & R.*

*adopted by* 2021 WL 1721706 (E.D. Tex. Apr. 30, 2021) (citations omitted).

Defendants acknowledge that because the statute of limitations expired, a dismissal would

effectively be with prejudice which is "reviewed under the heightened standard," but do not argue

that any aggravating factors are present. ECF No. 28, at 6, 8. Despite Plaintiffs not showing good

cause for failing to timely effect service on Defendants, the Court finds that none of the aggravating

factors necessitating dismissal with prejudice is present. Plaintiffs filed this action in March 2023

and attempted to effectuate proper service within the time period prescribed by the Court. *See*

ECF Nos. 1, 7, 8, 10, 13, 15, 18, 19, 20, 23. Although the delay is attributable to Plaintiffs because

they are pro se,[5] the delay here is much shorter than in cases where courts have dismissed with

prejudice. *See Thrasher*, 709 F.3d at 511 (affirming dismissal with prejudice for failure to serve

defendants because plaintiff waited four months after filing his complaint to effect service, and he

did not respond or attempt to re-serve after defendants filed a motion to dismiss for insufficient

process); *Fedex Customer Info. Servs., Inc. v. D&D Polymer Co.*, No. DR-12-CV-11-AM/VRG,

2014 WL 12872331, at *7 (W.D. Tex. Jan. 9, 2014) (dismissing plaintiff's case with prejudice

based on "a clear record of delay" because plaintiff was completely inactive in its case for twenty

months).

In addition, the delay does not seem intentional, and Defendants do not assert that they will

experience any prejudice. *See Beck v. ISC Constructors, LLC*, No. 1:14-CV-174, 2015 WL

1088846, at *6 (E.D. Tex. Mar. 4, 2015) (finding that dismissal with prejudice was not warranted

---

[5] The Court observes, however, that Plaintiff Sullivan is apparently an attorney. Compl. 6–7.

because serving defendants 150 days after filing the amended complaint was not a significant delay and it appeared that the delay was caused by "negligence and lack of diligence on the part of the plaintiffs' attorneys" and was not intentional).

Because service was defective, the undersigned recommends that the district judge give Plaintiffs the opportunity to serve Defendants within fourteen days after entry of any order adopting these findings, conclusions, and recommendation (FCR). In the event Plaintiffs effectuate proper service, it is recommended that the district judge deny Defendants' 12(b)(5) Motion as moot. *See Bowling v. Childress-Herres*, No. 4:18-CV-610-ALM-CAN, 2019 WL 4463450, at *9 (E.D. Tex. Aug. 7, 2019) (recommending plaintiff have fourteen days from the date of any order adopting the FCR to re-serve defendant with an amended complaint), *R. & R. adopted by* 2019 WL 4451122 (E.D. Tex. Sept. 17, 2019); *Culley v. McWilliams*, No. 3:20-CV-0739-E-BH, 2021 WL 1799431, at *5–6, *11 (N.D. Tex. Apr. 14, 2021) (giving plaintiff thirty days to properly effect service because plaintiff "would be barred by the statute of limitations from refiling her claim"), *R. & R. adopted by* 2021 WL 1789161 (N.D. Tex. May 4, 2021). In addition, the undersigned recommends that Plaintiffs be given leave to amend their Complaint to address the deficiencies discussed below, and properly serve Defendants with such complaint. If Plaintiffs do not re-serve Defendants within the relevant period, the undersigned recommends that the district judge grant their 12(b)(5) Motion to Dismiss without prejudice.

**B. The Court has not considered any attachments to Plaintiffs' Response in connection with the 12(b)(6) motion.**

Prior to analyzing the substantive arguments in Defendants' Motion, the Court must address whether it may properly consider the attachments to Plaintiffs' Response to Defendants'

Motion to Dismiss.[6]  When considering a Rule 12(b)(6) motion, "a district court must [typically] limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Fifth Circuit, however, "has recognized one limited exception." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  A court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.* (citation omitted).

The Fifth Circuit has not set forth a test for determining whether a document is "central" to a plaintiff's claims, but "case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).  Where a document "is merely evidence of an element of the plaintiff's claim," however, "the court may not incorporate it into the complaint." *Id.* (citing *Scanlan*, 343 F.3d at 536–37).  Regardless, "when matters outside the pleading are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiffs attached a document with seven exhibits to their Response to Defendants' Motion to Dismiss:  (1) "Garza County Website Employee List" (Exhibit 1); (2) "Sullivan Proofs of Service" (Exhibit 2); (3) "Emailed Complaint to Dep [sic] Melton" (Exhibit 3); (4) "Emailed Complaint to Dep [sic] Johnson" (Exhibit 4); (5) "Website for Garza County Attorney" (Exhibit 5); (6) "Still from arrest video" (Exhibit 6); and (7) "Statement by Joseph Sullivan" (Exhibit 7). ECF No. 42.  Exhibit 1 shows that Johnson and Melton are listed as Garza County Sheriff's Office

---

[6] Defendants also attached declarations from Quintana and Weems regarding Plaintiffs' attempted service on them. ECF No. 29.  The Court does not consider these attachments because they are not necessary for resolving Melton and Johnson's 12(b)(6) motion.

employees, which Plaintiffs assert supports their contention that Defendants can be served through email. ECF No. 41, at 4; ECF No. 42, at 5–6. Exhibit 2 is the Proof of Service left at Garza County Law Enforcement Center, that purportedly comports with TRCP 106(b) and entitles Plaintiffs to substituted service under that rule. ECF No. 41, at 3; ECF No. 42, at 7–15. Exhibits 3 and 4 are screenshots of the emailed Complaint to Melton and Johnson, and Exhibit 7 is a signed statement from Plaintiff Sullivan averring that he emailed the Complaint to Defendants. ECF No. 42, at 16–20, 26. These three exhibits are also attached to support Plaintiffs' request to serve Defendants by email under TRCP 106(b). ECF No. 41, at 4. Exhibit 5 is a screenshot showing that Ted Weems is the County Attorney for Garza County, attached apparently to bolster Plaintiffs' request to serve Defendants through Weems because he is "the contact point for a possible [w]aiver of [s]ervice for" Defendants. ECF No. 41, at 5; ECF No. 42, at 21–22. Lastly, Exhibit 6 is an indistinct "still" from the arrest "lapel video," attached to rebut Defendants' assertion of qualified immunity and show "[n]o reasonable person . . . would believe a small black unsealed bag contained THC." ECF No. 41, at 9; ECF No. 42, at 23–24.

All but Exhibit 6 relate to Plaintiffs' contention that service was proper and are therefore irrelevant to the Court's evaluation of Defendants' 12(b)(6) motion. Although the "still" purportedly showing the black bags is referenced in Plaintiffs' Complaint, because it is not central to Plaintiffs' claims nor attached to Plaintiffs' Complaint, the Court declines to consider it as well. Exhibit 6 is "merely evidence" related to Plaintiffs' claim, i.e., based on the bag's appearance it was not reasonable for Johnson to think it contained THC. *See* Compl. 9 ("Sullivan requested the lapel videos."); ECF No. 41, at 9. For this reason, at the 12(b)(6) stage the Court accepts as true only Plaintiffs' well-pleaded allegations and need not consider the attachment. *See Kaye*, 453 B.R. at 662 (holding that the court would not consider a report at the 12(b)(6) stage because it was not

necessary to establish an element of any claim but was "merely one piece of evidence that the [plaintiff] relie[d] on to support his" insolvency allegations); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. Apr. 2023) (Rule 12(b) gives a district court "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.").

### C. Plaintiffs have not pleaded facts sufficient to overcome Defendants' qualified immunity defense.

Defendants seek dismissal of Plaintiffs' claims, contending they are entitled to qualified immunity as to every claim. ECF Nos. 28, 49. Defendants assert that dismissal is proper as to the unreasonable search claim because the initial traffic stop was lawful and properly continued when Defendant Johnson developed additional reasonable suspicion based on his observation of the bags in the backseat. ECF No. 28, at 10. Dean arrived in a "few minutes" and "based on a canine hit the car was searched." *Id.* In Plaintiffs' Response, they assert that "[n]o reasonable person, nor any reasonable officer would believe a small black unsealed bag contained THC" and that this "position is supported by the undisputed fact no THC was located." ECF No. 41, at 9. Plaintiffs "also dispute that a 'canine hit' occurred" and allege that Johnson was being untruthful when he stated he "did not know how a hit was indicated because this was the only police canine in the community." *Id.* Plaintiffs aver "that this information[—i.e., the hit—]was intentionally fabricated" and "[n]o reasonably law abiding law enforcement officer would fabricate evidence." *Id.* at 9–10. In Defendants' Reply, they reiterate that Plaintiffs fail to "articulate a constitutional violation or establish that" Melton and Johnson's actions "were unreasonable through reference to clearly established case law." ECF No. 49, at 10.

Qualified immunity protects government officials performing discretionary functions from civil liability to the extent "their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a

defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the

inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)

(describing standard for evaluating defense of qualified immunity when raised in a Rule 12(b)(6)

motion); *accord Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) ("Because the officers

invoked a qualified immunity defense, the burden shifts to [plaintiff] to show the officers violated

his clearly established rights.").

"Where public officials assert qualified immunity in a motion to dismiss, a district court

must rule on the motion." *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022). If "the pleadings

are insufficient to overcome [qualified immunity], the district court must grant the motion to

dismiss without the benefit of pre-dismissal discovery." *Id.* at 312. In deciding whether a

defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. *Club Retro,

L.L.C.*, 568 F.3d at 194. Under the first prong, a court must decide whether the facts alleged, taken

in the light most favorable to the plaintiff, show the officer's conduct violated a federal

constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555

U.S. at 236; *see Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935

F.3d 444, 451 (5th Cir. 2019)) (describing the two-part inquiry). Under the second prong, a court

must determine whether the constitutional right in question was clearly established at the time of

the alleged misconduct. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

A court may use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Solis*, 31 F.4th at 981 ("The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established."). When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, a court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (providing that a plaintiff must "state a claim to relief that is plausible on its face," absent statements that are "no more than conclusions," which "are not entitled to the assumption of truth"). Accordingly, the threshold question here is whether, accepting Plaintiffs' properly pleaded factual allegations as true, Defendants violated Plaintiffs' constitutional rights and, if so, whether Defendants' actions were objectively unreasonable. *See Backe*, 691 F.3d at 648; *Solis*, 31 F.4th at 981.

### 1. *Unreasonable Search*

Plaintiffs allege an unreasonable search and a fabrication of evidence claim, but the basis for both is that their car was searched without probable cause. Compl. 12 (asserting under their "Unreasonable Search" section that "Melton is shown on . . . videos agreeing that a consent to search can lawfully be withdrawn" and "Defendants violated Plaintiff's [sic] . . . rights to be free from unreasonable search of their property such as the rental vehicle and bags inside the vehicle"); *id.* at 12–13 (averring that Zara "did not indicate a scent of drugs" and Johnson and Dean "conspired to fabricate evidence and deprive Plaintiffs of their right to be free from unreasonable search").

It is unclear, however, whether Plaintiffs are claiming Johnson and Melton independently believed Zara did not hit, based on their experience and observation, or they simply relied on Dean's purportedly false report. *See* Compl. 13 ("Johnson and Defendant Dean conspired to fabricate evidence."); *id.* ("Defendant[s] Johnson and Melton said they didn't know how the dog indicated the presence of drugs, even though Zara is the only dog the department used at that time."); *id.* at 8 ("Defendant Johnson said 'she hit on the back door.'"). It is also uncertain whether Plaintiffs are asserting only that the search of the vehicle after the "open air sniff" was unreasonable or if they are also claiming that the sniff itself was an unreasonable search and that Johnson did not have reasonable suspicion to call a dog. Thus, the Court analyzes the constitutionality of the entire stop, including whether: (1) there was reasonable suspicion to extend the stop and call a dog; (2) the open-air sniff was permissible; and (3) there was probable cause to search the vehicle despite Plaintiffs' assertion that Zara did not alert.

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks and citation omitted). "Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *Anderton v. Tex. Parks & Wildlife Dep't*, No. 3:13-CV-01641-N, 2014 WL 11281086, at *9 (N.D. Tex. Feb. 14, 2014) (internal quotation marks omitted) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). "Traffic stops are considered seizures" under the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001).

a.    **Reasonable suspicion for calling a dog**

The validity of a traffic stop is evaluated using the two-part *Terry* reasonable suspicion inquiry.[7] *United States v. Shen*, 749 F. App'x 256, 259 (5th Cir. 2018) (per curiam); *see United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (noting that the Fifth Circuit, "following the Supreme Court, has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation as *Terry* stops"). First, the court must determine whether the stop "was justified at its inception" and then examine "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Weisshaus v. Teichelman*, 637 F. Supp. 3d 434, 441 (N.D. Tex. 2022) (quoting *Brigham*, 382 F.3d at 506); *accord Shen*, 749 F. App'x at 259. A traffic stop solely based on the belief that a traffic violation has been committed "can become unlawful if it is prolonged beyond the time reasonably required" to address the reason for the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "Authority for the seizure ends when tasks tied to the infraction are—or reasonably should have been— completed." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). "Therefore, absent reasonable suspicion of additional criminal activity, waiting for or conducting a dog sniff cannot prolong a stop justified by only a traffic violation beyond the amount of time reasonably required to complete the mission of issuing a traffic ticket . . . ." *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016); *see United States v. Castaneda*, No. 1:21-CR-031-H-BU-1, 2021 WL 4079128, at *5 (N.D. Tex. Sept. 8, 2021) ("[A] dog sniff 'is a measure aimed at detecting evidence of ordinary criminal wrongdoing,' 'is not an ordinary incident of a traffic stop,' and, therefore, 'is not fairly characterized as part of the officer's traffic mission.'" (citation omitted)).

---

[7] *Terry v. Ohio*, 392 U.S. 1 (1968).

Reasonable suspicion exists if, based on the totality of the circumstances, the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. "[I]f additional reasonable suspicion arises," "then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006) (quoting *Lopez-Moreno*, 420 F.3d at 430).

Plaintiffs do not challenge the validity of the traffic stop itself. ECF No. 41, at 9 ("Plaintiff's [sic] have not challenged the lawfulness of the traffic stop for speeding."). They do, however, contend that Johnson's decision to call a drug dog was "not in furtherance of the initial alleged speeding infraction" and that they were "held against their will while waiting for" the dog. Compl. 6. The Court therefore analyzes whether Johnson developed additional reasonable suspicion to call the dog and allow Dean to conduct the sniff. Plaintiffs aver that while conducting the traffic stop, Johnson saw bags in the back of Plaintiffs' car that "look[ed] like . . . THC bags . . . from a dispensary." *Id.* at 7. They also contend that "[t]he factual dispute . . . [is] the assertion Deputy Johnson saw 'THC bags.'" ECF No. 41, at 9. At this stage, the Court may only accept Plaintiffs' narrative to determine whether there was reasonable suspicion to call a drug dog. Plaintiffs allege: (1) it was "around midnight"; (2) Johnson said "he suspected there are sealed bags . . . from a dispensary" that "look[ed] like . . . THC bags"; and (3) Johnson could not "see back there" to determine what was in them. Compl. 7.

Based on the totality of circumstances, the undersigned determines that Plaintiffs have not pleaded facts showing Johnson and Melton unlawfully called a dog and extended the stop. Plaintiffs state that it was late at night, and Johnson saw bags that looked like they were from a dispensary and contained THC but could not dispel his suspicion without calling a dog. *See*

*Alexander v. City of Round Rock*, 854 F.3d 298, 304 (5th Cir. 2017) (listing the time of day as a relevant factor in the reasonable suspicion analysis (citing *United States v. Michelletti*, 13 F.3d 838, 845 (5th Cir. 1994) (en banc) (DeMoss, J., concurring) ("noting that at 2 a.m. 'the overwhelming majority of law-abiding citizens are at home in bed,' unlike the defendant"))); *United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998) (holding that travelling around 1:15 a.m. "may not by itself give rise to reasonable suspicion," but was a "permissible consideration").

In addition, as Plaintiffs allege, Johnson's suspicion was not based on a mere hunch that criminal activity was occurring, but rather a belief that the bags contained THC based on their appearance. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (holding that officers must be allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available"); *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (providing that "reasonable suspicion . . . falls considerably short of 51% accuracy . . . to be reasonable is not to be perfect" (internal quotation marks, brackets, and citations omitted)).

Moreover, while there is not a specific allegation of how long the entire stop lasted, the Court gleans the following from Plaintiffs' complaint:  (1) Johnson saw the bags following the initial stop; (2) Johnson asked Chavez to step out the vehicle and consent was given; (3) Melton then ordered Sullivan out of the vehicle; (4) Chavez asked whether she had to consent to the search and revoked consent after Sullivan answered in the negative; (5) Johnson handcuffed Sullivan; Johnson called Dean; (6) Sullivan questioned Johnson's reasonable suspicion for placing him in handcuffs; (7) a "few minutes later" Dean arrived; (8) Dean walked around the vehicle and indicated that Zara alerted; (9) Johnson and Melton searched the vehicle and found nothing; (10) Johnson wrote a warning for speeding; and (11) Plaintiffs were allowed to leave. Compl. 5–

9. Based on Plaintiffs' assertions, it appears that, in rather straightforward fashion, Johnson made a valid traffic stop and shortly thereafter observed what he believed to be THC packages. Following a conversation where Chavez gave and then withdrew consent, during which time Johnson handcuffed Sullivan and placed him in a squad car, and Johnson then summoned Dean, who arrived "a few minutes later." Johnson alleges no facts indicating Dean, or any other Defendant for that matter, engaged in any conduct intended to or that in fact unreasonably extended the duration of the stop.[8] Thus, based on the facts alleged, there was both reasonable suspicion to extend the stop to call the dog and conduct a sniff, and the detention was only continued for as long as necessary to dispel the additional suspicion. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) (placing no strict time-limit on an investigative detention and instead assessing whether "police diligently pursue[d] their investigation" (quoting *United States v. Place*, 462 U.S. 696, 709 (1983))); *see also United States v. Grant*, No. V-05-151, 2007 WL 677636, at *9 (S.D. Tex. Feb. 28, 2007) (stating that "[s]everal Supreme Court and Fifth Circuit cases instruct that employing a drug dog promptly is generally the most efficient and least intrusive means of investigating hidden narcotics").[9]

---

[8] Plaintiffs maintain in their Response that there is a "factual dispute" as to whether Johnson reasonably believed the items were THC bags. *See, e.g.*, ECF No. 41, at 9. The Court makes no resolution of potential disputed fact issues at the 12(b)(6) stage—it simply accepts as true any well pleaded facts. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("[C]ourts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."). Although Sullivan disputes Johnson's stated belief, he pleads no facts *in the Complaint* demonstrating that Johnson's conclusion was unreasonable. Moreover, Plaintiffs' argument that "no THC was located" demonstrates the unreasonableness of the search is without merit. ECF No. 41, at 9; *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (stating that "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight").

[9] As set forth below, Defendants appear to have had probable cause to search the vehicle based simply on Defendant Johnson's observations. *See infra* Section III.C.2.a. If true, such a conclusion would negate any issue related to extending the traffic stop.

b.      **Open-air sniff**

Having determined that officers had reasonable suspicion to extend the traffic stop, the Court next considers whether Defendants' request for Zara to conduct an open-air sniff violated Plaintiffs' Fourth Amendment rights. *See* Compl. 11–12 (alleging that Dean's use of Zara violated their right to be free from an unreasonable search); *id.* at 12 (asserting that Dean and Defendants "conspired and worked in tandem" to violate Plaintiffs' rights). The undersigned concludes it did not.

An open-air sniff does not constitute a "search" under the Fourth Amendment. *See Place*, 462 U.S. at 707 (concluding that a "sniff discloses only the presence or absence of narcotics, a contraband item" and "d[oes] not constitute a 'search' within the meaning of the Fourth Amendment"); *Caballes*, 543 U.S. at 409 (holding that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests" and "[a]ny intrusion . . . does not rise to the level of a constitutionally cognizable infringement"); *United States v. Moore*, 329 F.3d 399, 404 (5th Cir. 2003) ("[A] dog sniff of a vehicle is not a Fourth Amendment 'search' requiring individualized suspicion."); *Weisshaus*, 637 F. Supp. 3d at 443 ("Free-air sniffs by narcotics-detection dogs are so minimally invasive that they do not constitute a 'search' or a 'seizure' for Fourth Amendment purposes."). Standing alone, Plaintiffs cannot state a cognizable Fourth Amendment claim against Defendants based on Zara's open-air sniff.

c.      **Probable cause to search the vehicle based on Zara's contested hit**

Plaintiffs generally allege an unreasonable search, in part because Chavez withdrew her consent, and more importantly, because Zara purportedly did not alert. Plaintiffs assert, and Defendants do not disagree, that Chavez withdrew her consent to search the vehicle before the dog

was called, and thus, the search was only reasonable if officers developed probable cause to search their vehicle. *United States v. de La Rosa-Valenzuela*, 993 F. Supp. 466, 470 (W.D. Tex. 1997) (stating that "consent to a search may be revoked . . . if a person effectively withdraws consent" (citing *United States v. Ho*, 94 F.3d 932, 934 (5th Cir. 1996))). Plaintiffs also assert that Johnson and Dean conspired to fabricate evidence to manufacture probable cause, which led to the unlawful search. While the ultimate basis of Plaintiffs' unreasonable search and fabrication of evidence claims is that officers did not have probable cause, Plaintiffs more explicitly assert that officers "conspired to fabricate evidence and deprive Plaintiffs of their right to be free from unreasonable search" based on their belief that Dean lied about Zara's alert. *See* Compl. 13. Thus, the Court analyzes whether there was probable cause to search the vehicle despite this belief in the section below.

### 2. *Fabrication of Evidence*

Plaintiffs essentially allege that Johnson and Dean conspired to fabricate evidence by lying about Zara's alert to provide justification for the claimed unlawful search. *See* Compl. 13; ECF No. 41, at 10 ("Plaintiff's [sic] alleged Deputy Johnson conspired to fabricate evidence, and a deprivation of Plaintiff's [sic] civil rights resulted from that conspiracy."). Plaintiffs argue in their response that Defendants do not address their fabrication of evidence claim. ECF No. 41, at 10. The Court agrees that Defendants' briefing on their assertion of qualified immunity does lack specificity; however, because Defendants raise qualified immunity in their motion and assert that their actions forming the basis of Plaintiffs' fabrication of evidence claim were reasonable, the undersigned finds that the defense was properly raised. *See* ECF No. 28, at 10 (stating "the actions of officers were reasonable . . . and based on a canine hit the car was searched"); *McGee v. Carrillo*, 297 F. App'x 319, 321 (5th Cir. 2008) (per curiam) (requiring defendant to "demonstrate that he

27

acted with a good faith belief that his actions were within his lawful authority, and that reasonable

grounds existed for this belief based upon objective circumstances" (quoting *Douthit v. Jones*, 619

F.2d 527, 534 (5th Cir. 1980))).[10]  Plaintiffs do not list the constitutional amendment under which

they bring their fabrication claim, i.e., the Fourth or the Fourteenth Amendment (Compl. 12–13;

ECF No. 41, at 9–10), while Defendants argue that Plaintiffs' claims are governed by the Fourth

Amendment.  *See* ECF No. 28, at 9–10; 44, at 8.[11]  The Court agrees with Defendants.

"Where a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted).  Here, the crux of

Plaintiffs' claims arises from the facts surrounding the traffic stop, the ensuing detention and

search, and whether there was probable cause for the vehicle search, thereby arising under the

Fourth Amendment.  Claims of fabricated evidence generally give rise to cognizable due process

violations only where the false evidence is used to criminally charge the plaintiff.  *See Jones v.

Perez*, No. 3:16-CV-2835-D, 2017 WL 4238700, at *10–11 (N.D. Tex. Sept. 25, 2017) (citation

omitted) (explaining that where plaintiff relied on the same factual allegations in support of

Fourteenth Amendment substantive due process claim as those for Fourth Amendment claim, i.e.,

falsification of evidence to support probable cause for arrest, his claim was "covered by the Fourth

Amendment and should be analyzed only under that constitutional provision," particularly where

---

[10] Plaintiffs also assert that Defendants fail to address their First Amendment claim. ECF No. 41, at 10. For the same reasons given for addressing whether Defendants are entitled to qualified immunity as to Plaintiffs' fabrication of evidence claim, and because Defendants argue that their actions were reasonable in light of law allowing officers to further detain and use handcuffs during a traffic stop, which if true, would defeat a First Amendment retaliation claim, the undersigned finds that Defendants properly raised a qualified immunity defense as to this claim. *See* ECF No. 28, at 10; *McGee*, 297 F. App'x at 321.

[11] Plaintiffs provide a general statement of case law but no relevant analysis.

plaintiff provided no evidence of deliberate fabrication resulting in a false criminal charge (internal quotation marks omitted)); *cf. Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015) (noting that "[w]here police intentionally fabricate evidence *and successfully get someone falsely charged . . . and the Fourth Amendment is unavailing*, there may be a due process violation" (emphasis added)), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), *opinion reinstated in relevant part*, 935 F.3d 444 (5th Cir. 2019) (en banc).  Because Plaintiffs make no such assertion here (*see* Compl. 8–9 (stating that "Johnson located nothing of evidentiary value" and Plaintiffs were "allowed to return to the rental vehicle")), they cannot state a cognizable independent Fourteenth Amendment claim.

### a.    Plaintiffs' belief that Zara did not alert

Liberally construing Plaintiffs' allegations, the Court understands Plaintiffs as alleging: (1) Johnson stated he did not know how Zara indicates a hit, Dean signaled or told Johnson and Melton that Zara alerted, and Johnson and Melton (relying on Dean's indication that Zara detected narcotics) searched Plaintiffs' vehicle; and (2) Dean lied and Defendants conspired about Zara detecting narcotics, which ultimately denied Johnson and Melton probable cause to search. Because Plaintiffs assert that Zara's failure to alert rendered officers without probable cause, the undersigned determines that Plaintiffs' claim is properly analyzed under the Fourth Amendment.

An alert by a drug dog establishes probable cause to search a vehicle. *Florida v. Harris*, 568 U.S. 237, 243 (2013).  But a "full alert" is not required to establish probable cause. *Weisshaus*, 637 F. Supp. 3d at 444 (quoting *United States v. Clayton*, 374 F. App'x 497, 502 (5th Cir. 2010) (per curiam)).  When determining the validity of probable cause established by a K-9 alert, the relevant question "is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal

contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Florida*, 568 U.S. at 248. "[E]ven assuming a dog is generally reliable," however, "circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog." *Id.* at 247.

Plaintiffs allege that Dean lied about Zara's alert to manufacture probable cause for a search; however, their allegations are confusing and at times contradictory, and the only affirmative assertion Zara did not in fact alert is Sullivan's conclusory, subjective belief that he "saw no indication of a hit." Compl. 8. As for Plaintiffs' specific allegations, they claim Dean took his K-9, Zara, around the vehicle rented by Plaintiff Sullivan, then walked back to his white truck and said nothing. *Id.* at 7–8. Contradictorily, Plaintiffs later claim that "after the open air search" Dean told Johnson and Melton "yes," apparently in reference to whether Zara hit. *Id.* at 13. Plaintiffs also allege that rather than saying anything, Dean made a gesture such as a nod or thumbs up towards the deputies (*id.* at 8) and threw a tennis ball against the rear driver's side door and gave it to Zara. *Id.* at 13. And while Johnson and Melton purportedly told Sullivan they did not know how the dog indicated the presence of drugs (*id.*), Johnson later told Sullivan Zara hit on the back door. *Id.* at 8.[12]

The Court need not accept as true these contradictory assertions made in relation to the circumstances of how Dean behaved after walking Zara around the vehicle, which render his claim "implausible on its face." *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (per curiam). While the Court typically liberally construes Plaintiffs' allegations in their favor at this stage, it is difficult to reconcile these differing and at times contradictory explanations of how Dean reacted after walking Zara around the vehicle. Compl. 8 (Dean "walked back to his

---

[12] Although Plaintiffs apparently obtained copies of body cam videos worn by various Defendants, they did not attach copies to the Complaint or provide them to the Court to aid in its review of their claims.

. . . truck and said nothing," but then "made a gesture" with "a nod or thumbs up towards the deputies."); *id.* at 13 ("Dean threw a tennis ball against the rear driver's side door and gave it to Zara."); *id.* (Dean said "[y]es" to Johnson and Melton, giving them the go-ahead to search Plaintiffs' vehicle.).

Because Plaintiffs' factual allegations present no clear, non-contradictory account stating a violation of constitutional law, the Court is left with their mere assertion that, based on their "experience" and "observations," Zara did not "unambiguously" alert. *Id.* at 12–13. Plaintiff Sullivan states he was "audibly surprised" when Dean said that Zara alerted, as "no indication was observed" from his perspective. *Id.* at 8. Plaintiffs' mere belief,[13] however, that Zara did not alert does not establish a constitutional violation under the Fourth Amendment.[14]

Setting aside Plaintiffs' vague and contradictory allegations, this claim suffers a more fundamental and potentially fatal flaw. Plaintiffs allege that Johnson's initial observation of what he believed to be "sealed bags . . . from a [THC] dispensary" began the chain of events that ultimately culminated in the alleged unlawful search of his car. *Id.* at 7. Assuming, for whatever reason, that Zara did not legitimately "hit" on Plaintiffs' car, such a "non-alert" does not destroy probable cause to search a vehicle without a warrant *if probable cause exists on other grounds*. *United States v. Villafranco-Elizondo*, 897 F.3d 635, 645 (5th Cir. 2018) (holding that a K-9's

---

[13] Plaintiffs' assertions present other practical issues as well. Because whether a dog alerts is presumably interpreted by its handler, it seems irrelevant that Johnson initially said he did not know how Zara indicated but then stated she did show a hit, allegedly *after* Dean, Zara's handler, either gestured or told Defendants she did alert. Moreover, Plaintiffs have neither pleaded facts showing that it was unreasonable for Defendants to rely on Dean's interpretation nor demonstrating that they were aware of or agreed to his false report.

[14] While likely needing factual development, e.g., possibly a motion for summary judgment, a dog's failure to "formerly alert" does not preclude immunity. *See, e.g., Weisshaus*, 637 F. Supp. 3d at 444. The Fifth Circuit has found that even absent a physical reaction—e.g., sitting or barking—from the dog, indicating that it senses drugs, probable cause may still exist. *Shen*, 749 F. App'x at 261 ("Evidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause." (quoting *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013))); *United States v. Parada*, 577 F.3d 1275, 1281–82 (10th Cir. 2009) (declining to adopt a rule "which would require the dog to give a final indication before probable cause is established").

failure to alert does not eliminate existing probable cause); *see United States v. Williams*, 124 F.

App'x 885, 887 (5th Cir. 2005) (per curiam) (concluding that where totality of circumstances

showed "officers had probable cause to search the vehicle prior to the arrival of the drug dog . . .

the failure of the drug dog to alert did not deprive the officers of probable cause to search the

vehicle").

"[P]robable cause is a flexible, common-sense standard. It merely requires that the facts

available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain

items may be contraband or . . . useful as evidence of a crime; it does not demand any showing

that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742

(1983) (citations omitted). Moreover, "searches and seizures based on mistakes of fact can

[nevertheless] be reasonable." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014); *see Carr v.

Hoover*, 837 F. App'x 279, 284 (5th Cir. 2020) (per curiam) (recognizing that "the Fourth

Amendment permits both reasonable mistakes of law and fact" (citing *Heien*, 574 U.S. at 61)).

According to Plaintiffs, Johnson stated he believed he observed contraband in plain sight

in their vehicle. Compl. 7. Because Plaintiffs allege that officers found nothing incriminating, the

Court presumes for 12(b)(6) purposes Johnson was incorrect in his belief that the items, based on

their packaging and appearance, originated from a dispensary and contained THC. Plaintiffs,

however, allege no facts *in their Complaint* demonstrating that Johnson's belief was unreasonable.

As pleaded, Johnson's mistake of fact does not negate a finding of probable cause. *See Brown*,

460 U.S. at 742–43 (finding officer had sufficient probable cause to seize item in plain view in

defendant's car where, *inter alia*, "the distinctive character of the balloon itself spoke volumes as

to its contents," despite the officer's inability to "see through the opaque fabric"); *Carr*, 837 F.

App'x at 284 (finding officer has probable cause to effectuate warrantless arrest where he observed

Sudafed boxes in plain view on truck's console and reasonably, but mistakenly, believed such boxes contained a precursor for manufacturing methamphetamine).

The undersigned finds that despite the foregoing deficiencies in Plaintiffs' Complaint, the possibility remains that Plaintiffs could conceivably state a constitutional violation under the Fourth Amendment should they be given leave to amend. The undersigned recommends that Plaintiffs be given one opportunity to plead facts, not simply conclusions, that plausibly state a constitutional violation.

### b.    Clearly established law

In addition, Plaintiffs fail to meet their burden in showing that Defendants violated clearly established law. *See Washington v. Smith*, 639 F. Supp. 3d 625, 639 (E.D. La. 2022) (noting that "plaintiff has the burden to point out the clearly established law" (quoting *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019))). Plaintiffs appear to have merely copied and pasted general rules from cases in their Response. ECF No. 41, at 6–9; *see Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) ("Clearly established law is *not* to be defined at a high level of generality."); *Thompson v. Richter*, No. 7:22-cv-00014-O, 2023 WL 348017, at *5 (N.D. Tex. Jan. 11, 2023). Because the undersigned has recommended that Plaintiff be given leave to amend to provide a final opportunity to allege facts plausibly stating a constitutional violation, any new non-conclusory facts the Court may be required to consider could, in theory, impact the "clearly established" analysis. For that reason, and despite Plaintiffs' failure to carry their burden at this juncture, the undersigned would recommend re-examining this issue in the event Plaintiffs replead.

### 3.    *Unlawful Detention and First Amendment Retaliation*

Plaintiffs assert that Johnson violated Chavez's "Fourth Amendment right to be free from unreasonable seizure of her person by illegally ordering her to not move from her position and

illegally detaining her with continuous threats of arrest." Compl. 11. Plaintiffs similarly allege

that Johnson subjected Sullivan to an "unreasonable seizure through an illegal false detention and

an illegal false arrest." *Id.* In addition, Plaintiffs allege that Johnson and Melton "conspired and

worked in tandem to violate Plaintiff's [sic] right to be free from unreasonable seizure, thus making

them each liable for the others [sic] illegal acts." *Id.* Plaintiffs claim that "[t]hese unlawful actions

were done with the specific intent to deprive Plaintiffs of their constitutional rights." *Id.*

Plaintiffs also appear to assert a First Amendment retaliation claim for unlawfully

handcuffing and placing Sullivan in the vehicle and ordering Chavez to stand against the vehicle

after Sullivan advised Chavez she did not have to consent. Compl. 5–6; *see id.* at 14 (averring that

"Chavez had a First Amendment right to ask Plaintiff Sullivan whether she had to consent to a

search of the rental vehicle" and "Sullivan had a First Amendment right to answer," and both were

"deprived of [their] liberty, as a result").

In sum and liberally construing Plaintiffs' Complaint, Plaintiffs assert that they

experienced a *de facto* arrest and retaliation for exercising their First Amendment rights.

### a.    *De Facto* Arrest Standard

"The first question is whether the officers 'had a reasonable suspicion . . . that criminal

activity may have been afoot.'" *Windham v. Harris Cnty.*, 875 F.3d 229, 239–40 (5th Cir. 2017)

(quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (brackets omitted)).[15] "The second

question is whether the seizure exceeded the bounds of a traffic stop and became a de facto arrest."

*Windham*, 875 F.3d at 240. A *de facto* arrest occurs when a person is restrained to "the degree

which the law associates with formal arrest." *Id.* "There is no bright line point of distinction

between an investigatory stop and an arrest; indeed, the 'endless variations in facts and

---

[15] The Court has already answered in the affirmative: Defendants had reasonable suspicion to detain Plaintiffs. *See supra* Section III.C.1.a.

circumstances' preclude efforts to locate one." *Brown*, 524 F. App'x at 75 (footnote omitted) (quoting *Florida v. Royer*, 460 U.S. 491, 506–07 (1983)). But the Fifth Circuit has found that an initially valid *Terry* stop transformed into an arrest when, for example, the stop lasts "longer than is necessary to effectuate its purpose." *Windham*, 875 F.3d at 241 (alterations and citations omitted). Using force or placing a suspect in handcuffs may also amount to an arrest. *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017); *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). Where, however, probable cause exists for an arrest, a court need not resolve these nuanced questions because a *de facto* arrest is justified. *United States v. Massi*, 761 F.3d 512, 524 (5th Cir. 2014); *see Lincoln*, 874 F.3d at 841–42 (recognizing that a *de facto* arrest "must be supported by probable cause").

**b.    First Amendment Retaliation Standard**

The First Amendment prohibits government officials from retaliating against individuals for their speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a retaliation claim, a plaintiff must show that "(1) the plaintiff engaged in activity protected by the First Amendment, (2) the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in' the activity, and (3) the defendant's 'actions were substantially motivated against' the plaintiff's protected activity." *Washington*, 639 F. Supp. 3d at 646–47 (quoting *Alexander*, 854 F.3d at 309). A retaliation claim, however, is only cognizable "when non-retaliatory grounds are . . . insufficient to provoke the adverse consequences." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam) (quoting *Hartman*, 547 U.S. at 256). Thus, if there was reasonable suspicion or probable cause to seize the individual, the plaintiff does not have a viable retaliation claim, and the defendant is entitled to qualified immunity. *Id.* (citing *Keenan*, 290 F.3d at 261–62).

c.    **Probable Cause Existed to Arrest Plaintiffs**

Neither party argues whether there was probable cause to arrest Plaintiffs, but based on the facts pleaded by Plaintiffs at this juncture, it appears that Defendants had probable cause to arrest Plaintiffs for possession of THC. *See, e.g.*, *Carr*, 837 F. App'x at 283 (concluding that officer had probable cause to effect warrantless arrest once he saw "what he believed to be seven boxes of Sudafed containing pseudoephedrine" inside a truck and identified § 1983 plaintiff as the driver). Here, Defendants saw in plain view through the car window bags they believed contained THC. *See supra* Section III.C.2.a.   As discussed above, the existence of probable cause for arrest precludes recovery for either a *de facto* arrest or retaliation for protected speech.   Moreover, because Defendants saw contraband, and there is no dispute that Sullivan and Chavez were the occupants of the vehicle, Defendants had probable cause to believe that they had committed the crime of possessing the contraband.  *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (holding that police were entitled to seize evidence revealed in plain view in the course of a lawful stop" and to arrest the "passenger when that evidence gave probable cause to believe passenger had committed a crime"); *United States v. Anaya-Sanchez*, 242 F. App'x 215, 217 (5th Cir. 2007) (concluding the arrest of defendant was proper because marijuana was left in plain view in a vehicle they recently occupied, providing probable cause to believe they committed the crime of marijuana possession).   In addition, once officers discovered that the bags did not contain marijuana, they wrote Plaintiffs a warning for the traffic infraction and let them go.  *Cf. United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008) (holding that officers subjected defendant to *de facto* arrest when after a search revealed nothing incriminating, they "handcuffed, placed [him] in a police car, [and] transported [him] to different locations" for over an hour and a half).  Despite the deficiencies in Plaintiffs' Complaint, because Plaintiffs could plausibly allege *de facto* arrest

and First Amendment retaliation claims if they include additional facts to support non-conclusory allegations, the undersigned recommends Plaintiffs be given leave to amend these claims.

### 4. *Excessive Force*

Plaintiffs assert that "Johnson illegally placed handcuffs on Plaintiff Sullivan," which "remained in place until [Defendants] . . . could not find any drugs inside the rental vehicle." Compl. 13–14. Plaintiffs state that the "use of handcuffs was excessive" and that "Sullivan continuously objected to the use of handcuffs and continuously questioned . . . why handcuffs were legal under the circumstances." *Id.* at 14.

To state a viable excessive force claim, plaintiff must show: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman*, 483 F.3d at 416 (citation omitted). Sullivan fails to establish the first and second elements.

Sullivan does not allege that he suffered *any* physical injury from being handcuffed. *See* Compl. 4–9, 13–14. As such, he cannot state a claim. *See, e.g., Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (requiring a plaintiff "to have 'suffered at least some form of injury'" to establish an excessive force claim (citation omitted)). Moreover, he has not pleaded any facts showing that the purported use of force—a mere application of handcuffs—was excessive. *Id.* at 5 ("Deputy Johnson then unlawfully placed Plaintiff Joseph Sullivan into handcuffs . . . ."); *Freeman*, 483 F.3d at 416–17 (finding that twisting plaintiff's "arms behind her back while handcuffing her," "jerk[ing]" her around, and "causing bruises and marks on her wrists and arms" was not an excessive use of force); *see also Glenn*, 242 F.3d at 314 ("[H]andcuffing too tightly, without more, does not amount to excessive force."); *Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 628 (N.D. Tex. 2019) ("Handcuffing a person, even if humiliating and

embarrassing, is 'not so extraordinary as to violate the Fourth Amendment.'" (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001)). Because Sullivan does not allege that he suffered any injury or that Johnson's use of force was excessive, he fails to state a plausible excessive force claim. Therefore, Johnson is entitled to qualified immunity and this claim should be dismissed.

### 5. *Battery*

Plaintiffs aver that "Johnson unlawfully battered Plaintiff Sullivan by unlawfully placing handcuffs onto Plaintiff without consent" and that "Sullivan continued to be battered until released" after the search concluded. Compl. 15.

Under Texas common law, the elements for battery are (1) harmful or offensive contact (2) with a plaintiff's person. *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 741 (S.D. Tex. 2016). Sullivan's battery claim is based on the same facts as his excessive force claim and thus, must be dismissed for the same reasons. *See Weldy v. Hatch*, 481 F. App'x 119, 123 (5th Cir. 2012) (per curiam) (dismissing plaintiff's excessive force and battery claims because plaintiff did not establish "that she could prevail on the latter while losing on the former"); *Terrell v. Pichon*, 413 F. Supp. 3d 515, 522 (E.D. La. 2019) (dismissing plaintiff's battery claim because "in the absence of any viable use of excessive force" against the trooper under § 1983, the battery claim also had to be dismissed). Because Sullivan fails to state a viable excessive force claim, and by consequence a viable battery claim, the undersigned recommends that the district judge dismiss the battery claim.

### 6. *Conspiracy*

It is unclear whether Plaintiffs intend to bring a conspiracy claim against Defendants because Plaintiffs only conclusorily reference a "conspiracy," and it is not specifically separated

into its own section like every other claim in Plaintiffs' Complaint.[16] *See* Compl. 11 (Defendants "conspired . . . to violate Plaintiff's [sic] right to be free from unreasonable seizure."), 12 (Defendants "conspired . . . to violate Plaintiff's [sic] right to be free from unreasonable searches."), 13 ("Johnson and Defendant Dean conspired to fabricate evidence."). The Court will, however, liberally construe their claims to include conspiracy. *See id.*

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *see Young v. Biggers*, 938 F.2d 565, 566 (5th Cir. 1991) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987))); *Chadman v. Quisenberry*, No. 4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require that the

---

[16] Defendants also do not address the conspiracy allegations in their Motion to Dismiss or Reply, and Plaintiffs only briefly mention it in their Response when explaining that Defendants did not address their fabrication of evidence or First Amendment claims. *See* ECF Nos. 28, 41, 49. Defendants state in their Reply that they are "assert[ing] the defense of qualified immunity as to all causes of action." ECF No. 49, at 9; *see* ECF No. 28, at 10. While "arguments raised for the first time in a reply brief" are generally waived, a court may rely on arguments presented for the first time in reply if the nonmovant has had ample opportunity to respond. *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr.-DTD 2/8/95*, 836 F. App'x 232, 235 (5th Cir. 2020) (per curiam) (brackets and citation omitted); *Commodity Futures Trading Comm'n v. EOX Holdings L.L.C.*, 405 F. Supp. 3d 697, 714 (S.D. Tex. 2019). Defendants' Reply was filed over two months ago and thus Plaintiffs have had ample opportunity to request leave to file a sur-reply but have not done so. Thus, the Court can consider Defendants' assertion of qualified immunity in their Reply if the defense was properly raised. *See EOX Holdings L.L.C.*, 405 F. Supp. 3d at 714 (considering defendants' new argument because plaintiffs had six months to request leave to file a sur-reply, but did not do so). While Defendants do not explicitly mention conspiracy, they do assert that their actions forming the basis of the alleged constitutional violations in Plaintiffs' conspiracy claims were reasonable. *See* ECF No. 28, at 10 (stating that the actions surrounding the seizure of Plaintiffs and the search and seizure of Plaintiffs' vehicle were reasonable). Thus, the undersigned finds that Defendants properly raised a qualified immunity defense as to Plaintiffs' conspiracy claims. *See McGee*, 297 F. App'x at 321.

claimant relate specific facts."). "Therefore, to establish [their] conspiracy claim, [Plaintiffs] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate [their] federal civil rights." *Montgomery*, 759 F. App'x at 314. In addition, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *accord Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No [constitutional] deprivation, no § 1983 conspiracy.").

Plaintiffs' conclusory allegations are insufficient to state a viable conspiracy claim. Because, however, the undersigned recommends that Plaintiffs be given an opportunity to cure previously identified shortcomings in their Complaint and for the reasons identified in this Court's FCR as to Dean's motion to dismiss, the undersigned again recommends that Plaintiffs be given leave concerning any conspiracy claim they attempt to assert, *as it relates to underlying claims that are not dismissed*.

### 7.    *Bystander Liability*

Plaintiffs allege that Melton "acted with deliberate indifference to the illegal acts of Defendant Johnson" and "had a duty to intervene and protect Plaintiffs [sic] right[s]." Compl. 11–15. Thus, although not specifically mentioned in their Complaint or Response to Defendants' Motion, Plaintiffs appear to be asserting a claim of bystander liability against Melton for all of the alleged constitutional violations. *See id.* Because the undersigned recommends that Plaintiffs be given leave to amend and Defendants assert qualified immunity as to "all causes of action" (ECF No. 49, at 9), the Court addresses the claim of bystander liability. Plaintiffs have not pleaded any facts and only allege in conclusory fashion that Melton was "deliberate[ly] indifferen[t]" and had a "duty to intervene." Compl. 11–15.

The Court need not accept conclusory allegations. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *see Maxwell v. Almanza*, No. 1:18-CV-0179-BU, 2021 WL 5969409, at *24 (N.D. Tex. Nov. 10, 2021) (dismissing plaintiff's bystander liability claim because plaintiff's allegation that defendant failed to "stop illegal actions" was insufficient to state a constitutional violation), *aff'd*, 2023 WL 6172020 (5th Cir. Sept. 22, 2023).    Despite the deficiencies in Plaintiffs' Complaint, because Plaintiffs could plausibly allege a bystander liability claim if they include supporting facts to support non-conclusory allegations, the undersigned recommends Plaintiffs be given leave to amend their bystander allegations as to any underlying claim that survives dismissal.

## IV.    <u>Leave to Amend</u>

Plaintiffs have not requested leave to amend their Complaint.    Nevertheless, the Fifth Circuit has observed that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).    Because Sullivan did not plead an injury or a use of force that was excessive, any amendment to his excessive force and battery claims would be futile. *See Launza v. City of Mesquite*, No. 3:20-cv-01710-E (BT), 2021 WL 4954348, at *7, *9 (N.D. Tex. Oct. 8, 2021) (finding that granting leave to amend plaintiff's excessive force claim would be futile because plaintiff did not allege an injury), *R. & R. adopted by* 2021 WL 4949301 (N.D. Tex. Oct. 25, 2021). Because the undersigned cannot conclude, at this stage, that amendment would be futile as to the

rest of Plaintiffs' claims, nor have Plaintiffs indicated they are unwilling to amend, Plaintiffs should be provided an opportunity to amend their Complaint.

## V.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge (1) dismiss with prejudice Sullivan's excessive force and battery claims, as well as the bystander liability claim against Melton based on those claims; and (2) provide Plaintiffs fourteen days after any order adopting this recommendation to (a) amend their conspiracy, bystander liability, unreasonable search, *de facto* arrest, First Amendment retaliation, and fabrication of evidence claims, and (b) serve Melton and Johnson with the amended complaint. Should Plaintiffs amend their claims and serve Defendants with an amended complaint, the undersigned recommends that the United States District Judge **DENY** Defendants' 12(b)(5) and 12(b)(6) Motions as moot.

In the event Plaintiffs elect not to amend their Complaint but instead re-serve Defendants with the extant Complaint, the undersigned recommends that the United States District Judge (1) **DENY** Defendants' Rule 12(b)(5) Motion and (2) **GRANT** Defendants' Rule 12(b)(6) Motion and dismiss Plaintiffs' complaint.

Finally, should Plaintiffs stand pat and neither amend or re-serve their Complaint, the undersigned recommends that the United States District Judge (1) **GRANT** Defendants' Rule 12(b)(5) Motion and (2) **DENY** Defendants' Rule 12(b)(6) Motion as moot.

## VI.    Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: November **3**, 2023.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

43